## Case No. 15,925.

### UNITED STATES v. ONE CASE OF SILK.

[4 Ben. 526; [1] 13 Int. Rev. Rec. 58.]

District Court, S. D. New York. Feb., 1871.

CUSTOMS DUTIES — PROCESS — SEIZURE — ATTACHMENT OF PROPERTY IN CUSTODY OF COLLECTOR.

1. A libel of information was filed against goods, to forfeit them for alleged violation of the revenue laws, and process was issued to the marshal, commanding him to attach the property and detain it in his custody. The marshal returned, that he had been unable to attach the property and to detain it in his custody, and an alias monition was issued to him. On the record in the cause, and an affidavit showing that the goods had been, previous to the filing of the libel, seized by the collector of the port of New York, and remained in his custody, and that a certificate to that effect had been issued to the marshal, an application was made, on behalf of the United States, for an order that the alias monition be modified, so as to conform to the provisions of the 31st section of the act of July 18, 1866 (14 Stat. 186). *Held,* that the provisions of the 4th section of the act of May 8, 1792 (1 Stat. 277), requiring the marshal to take custody of all goods seized by any officer of the revenue, were abrogated by the 31st section of the act of July 18, 1866 (14 Stat. 186).

[Cited in Re Two Hundred and Fifty Tons of Salt, 5 Fed. 220.]

2. The 9th admiralty rule of the supreme court, in view of the provision of the act of 1866, was not applicable to the case, it being a case, in the language of that rule, "otherwise provided for by statute."

3. The alias monition would, therefore, be modified, so that it should command the marshal to attach the property by leaving with the collector, or other person having the property in custody, a copy of the monition and a notice requiring such collector or other person to detain such property in custody until the further order of the court respecting it.

T. Simons, Asst. U. S. Dist. Atty.
John Sedgwick, for the marshal.

BLATCHFORD, District Judge. The libel of information in this case avers that the property proceeded against was "seized on waters navigable from the sea by vessels of ten or more tons burthen," by the collector of customs for the port and collection district of the city of New York, as forfeited to the United States for violations of the 24th and 68th sections of the act of March 2d, 1799, in relation to duties on imports and tonnage. The prayer of the information is, "that due process issue in that behalf, as well of attachment, to bring the said property within the custody of the court, as of monition, to all parties in interest, to appear on the return of such process and duly intervene herein, by claim and plea to the premises," and that the property be condemned, by decree of forfeiture, to the use of the United States.

On the filing of the libel of information, a writ was issued to the marshal of the Southern district of New York, commanding him to attach the property and to detain it

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

in his custody until the further order of the court respecting it, and to give due notice, &c. The writ was returnable September 27th, 1870. The return to it made by the marshal on that day was as follows: "I certify, that, after due diligence, I have been unable to attach the property described in the within monition and to detain the same in my custody. George H. Sharpe, U. S. Marshal."

An affidavit is now presented to the court, on the part of the United States, made by a deputy collector of the customs at the port of New York. It sets forth, that such deputy collector has, under the collector, the care and custody of all goods seized within this district, on account of alleged violations of the customs revenue laws, and of the institution of proceedings for the recovery and enforcement of fines, forfeitures and penalties under such laws; that there has been ever since April, 1869, and was for a long time prior thereto, in the custom-house at the port of New York, a room specially assigned for the storage of seized goods; that there are employed in said room a storekeeper, an opener and packer, and a laborer, all under salary; that, until recently, ever since April, 1869, and for a long time prior thereto, it was the custom, where goods had been seized and placed in the seizure room, and a suit had been instituted for their condemnation, for the marshal of the district to call at the custom-house and make inquiry if the goods were in the possession of the collector, and, thereupon, to make return upon the monition, of the attachment of the goods proceeded against; that, some few months since, the marshal made claim to remove from the seizure room, and from the custody of the collector, goods against which he held a monition; that, thereupon, such deputy collector was led to investigate the law, and to consult with the district attorney of the United States; that such investigation and consultation resulted in the collector's deciding to retain possession of the goods until final adjudication, unless otherwise ordered by the court; that, after some time had elapsed, and after various attempts to procure a submission of the question to the decision of the court, the marshal, on the presentation of a monition, and, in one or two instances of an alias monition, demanded the possession of the goods therein described; that, thereupon, such deputy collector gave to the marshal a certificate signed by him, in substance, as follows: "This may certify, that the goods" (giving marks, &c.,) "described in the monition now exhibited to me by the United States marshal, dated, are in the seizure room of the custom-house, and in the custody of the collector of the port of New York. In accordance with section 31 of the act of July 18th, 1866, and acting under the advice of the United States district attorney, the collector de-

clines to deliver the same to the order of the United States marshal, but holds the same to abide adjudication, subject to the order of the court;" that a certificate the same in substance as the foregoing was given in the present case to the marshal or his deputy, upon his presenting the monition and demanding the goods proceeded against; that a like certificate has been given, under like circumstances, in other cases which have been instituted since this question was first raised; that the custom-house is a fire-proof building, and under the care of watchmen during the night; that the place assigned for the storage of seized goods, and known as the seizure room, is immediately underneath the rotunda in said building, and is not accessible from the street, and is securely locked and barred at night; that all seized goods are kept therein, without any expense chargeable upon the goods for storage or insurance; that the only expenses charged upon goods coming into the seizure room, are the incidental expenses for cartage to the seizure room from the place of seizure, and occasional small sums for labor, such as the cooperage of leaking casks; that it has been the practice of such deputy collector to require, in all cases where goods against which a suit has been commenced, have been, for any cause, released, a direction for their release, from the marshal; that such was the practice when such deputy collector assumed the duties of his office, in April, 1869; that he has continued to require such direction, as being evidence of the direction of the court in the premises, and also evidence that the marshal has received all fees and costs to which he is entitled; and that it has been the practice to deliver goods which have been condemned, to the marshal, or his order, for sale.

An alias monition, with directions like those in the original monition, as to the attachment and detention of the property, has been issued, in the case, to the marshal. On the records in the cause, and the foregoing affidavit, a motion is now made to the court, on the part of the United States, for an order that such alias monition be so modified in respect to the clause therein contained, commanding the marshal to attach the property, and to detain it in his custody until the further order of the court respecting it, as to conform to the provisions of the 31st section of the act of July 18, 1866 (14 Stat. 186), or that he make return thereto, stating the fact that such property was found in the custody of the collector, and is left in his custody, under the provisions of said act. Such motion is made on notice to the marshal, and is opposed by the marshal.

In order to understand fully the question presented on this motion, it will be necessary to refer to the course of legislation and judicial decision on the subject involved.

By the first statute passed by congress to regulate the collection of customs duties, that of July 31, 1789 (1 Stat. 29), provision was made for the seizure of vessels, goods, wares and merchandise by officers of the revenue, as forfeited, for violations of that act. The 25th section of that act (page 43) contained the following provision: "All goods, wares and merchandise which shall be seized by virtue of this act, shall be put into, and remain in, the custody of the collector, until such proceedings shall be had, as by this act are required, to ascertain whether the same have been forfeited or not; and, if it shall be adjudged that they are not forfeited, they shall be forthwith restored to the owner or owners, claimant or claimants thereof." This act of 1789 was repealed from and after October 1, 1790 by the 74th section of the act of August 4, 1790 (1 Stat. 178), but the 49th section (page 170) of such act of 1790 was a re-enactment, verbatim, of the provision above cited from the 25th section of the act of 1789, except that, after the word "collector" were added the words, "or such other person as he shall appoint for that purpose."

Then followed the 4th section of the act of May 8, 1792 (1 Stat. 277), entitled, "An act for regulating processes in the courts of the United States, and providing compensation for the officers of the said courts, and for jurors and witnesses," which provides, that "the marshal shall have the custody of all vessels and goods seized by any officer of the revenue, and shall be allowed such compensation therefor as the court may judge reasonable." That provision has never been expressly repealed.

The act of August 4, 1790, was repealed from and after June 30, 1800, by the 112th section of the act of March 2, 1799 (1 Stat. 704), but the 69th section (page 678) of such act of 1799 is a re-enactment, verbatim, of the provision so found in the 49th section of the act of 1790, except that the words, "goods, wares and merchandise," are changed to "goods, wares or merchandise." This provision of the act of 1799 has never been expressly repealed.

The first time that these provisions of law appear to have come under judicial cognizance was in the case of Burke v. Trevitt [Case No. 9,163], in 1816, where Mr. Justice Story remarked, that, where property is seized as forfeited under the revenue laws, it is the duty of the seizing officers immediately to institute the proper process to ascertain the forfeiture; that, as soon as the process is commenced, the property is in the custody of the law; that it is a general rule, in all proceedings in rem, that the custody of the thing in controversy belongs to the court in which the suit is pending; that the provision in the 4th section of the act of May 8, 1792, directing that the marshal should have the custody of all vessels and goods seized by the revenue officers, was altered, as to goods, by

the provision of the 69th section of the act of March 2, 1799, declaring that all goods seized under that act should be put into, and remain in, the custody of the collector or his agent. He added: "This act, however, does not change the legal custody, after process is served upon the property. It is still, in contemplation of law, in the custody of the court; and the collector remains as much responsible to the court for the property, and as much bound to obey its decrees and orders, as the marshal is, as to property confided to his care. The collector is, in fact, quoad hoc, the mere official keeper for the court."

The question thus discussed by Mr. Justice Story came before Judge Betts, in this court, in 1831, for direct adjudication, in the case of the jewels stolen from the Princess of Orange, which were libelled in rem, by the United States, after being seized for a violation of the customs laws. Process was issued to the marshal, to attach the property. The collector claimed, under the act of 1799, the right to retain the property, and the marshal claimed the right to take the custody of it, under the process, and the act of 1792. The question in controversy was brought before Judge Betts, and he decided that the custody of the goods seized belonged to the marshal, as soon as proceedings were instituted to ascertain whether they were forfeited. The minister of the king of the Netherlands having requested from the president the delivery to him of the jewels, as the property of the Princess of Orange, the secretary of state, in November, 1831, submitted the opinion of Judge Betts, a copy of which does not now seem to be accessible, to the attorney general, Mr. Taney, (afterwards Chief Justice Taney,) for his consideration. He came to the conclusion (2 Op. Attys. Gen. U. S. 477), that Judge Betts was wrong and Judge Story was right; that, under the act of 1799, the custody of goods seized belonged to the collector, not only until the libel was filed, but also until the question of forfeiture was adjudicated; that so much of the act of 1792 as gave the custody to the marshal was repealed, and intended to be repealed, by the act of 1799; that, in legal contemplation, the goods were in the custody of the court as soon as the process was issued; that, although the actual possession and care of them was committed to the collector, he held them as the official keeper of the court, and was bound to obey its order and direction, whether conveyed to him through the marshal or in any other form; and that, whether the custody was in the collector or the marshal, the goods would be under the control and power of the court, and subject to its direction. Mr. Taney concluded his opinion by saying, that he thought the point decided by Judge Betts ought to be subjected to revision or put at rest by an explanatory act of congress.

Neither course was taken, and the question remained in this shape until December, 1838. At that time, certain goods which had been seized by the collector of New York, as forfeited for a violation of the customs laws, were libelled in rem, by the United States, in this court. Thereupon, a monition and warrant was issued to the marshal, directing him to attach the goods, and to detain the same in his custody until the further order of the court respecting the same, and to give notice, &c. The collector then made a motion to this court, that the clause in the monition, by which the marshal was directed to detain the goods attached in his custody until the further order of the court respecting the same, might be stricken out on the ground that it was repugnant to the 69th section of the act of 1799, and was, therefore, illegal and void, or that the monition should be so amended, that the goods should remain in the custody of the collector, or such person as he should appoint for that purpose, until the proceedings commenced for the forfeiture of the goods should be determined, and it should be judicially ascertained whether the same had been forfeited or not. This court denied the motion of the collector. Thereupon, the collector made a motion to the supreme court (Ex parte Hoyt, 13 Pet. [38 U. S.] 279), at the January term, 1839, for a mandamus to be directed to the district judge, commanding him to vacate the order denying the motion of the collector, and to grant the motion, or so much of it, and in such form, as the supreme court should direct. The question was elaborately argued on the merits by counsel for the collector and the marshal, Chief Justice Taney and Mr. Justice Story being members of the court. The statutes on the subject were commented on, and the views expressed by Mr. Justice Story, in Burke v. Trevitt, and by Chief Justice Taney, in his opinion in the case of the jewels, were urged by the counsel for the collector. Mr. Justice Story delivered the opinion of the court, and refers to the decision of Judge Betts in the case (which is not now to be found) as an elaborate opinion, reviewing the whole series of laws on the subject. The supreme court held that the case was not one in which it had the power to issue the writ asked for. But it nevertheless went on, through Mr. Justice Story, to say: "As there appears to have been some diversity of construction, in the different districts of the United States, of the laws on this subject, and as it is a matter of general concern throughout all the commercial districts, and applicable to the daily practice of the courts, and the point has been fully argued, we think it right to say, that we are of opinion, that the construction of the laws of the United States, maintained by the district judge in his opinion, is the correct one, to wit, that, by the sixty-ninth section of the collection act of 1799, the goods, wares and merchandise seized under that act are to be put into, and remain in, the custody of the collector, or such other persons as he shall appoint for that purpose, no longer than until the proper proceedings are had, under the

eighty-ninth section of the same act, to ascertain whether they are forfeited or not; and that, as soon as the marshal seizes the same goods under the proper process of the court, the marshal is entitled to the sole and exclusive custody thereof, subject to the future orders of the court." These views, though not of binding force as an adjudication on the merits involved, are those of all the judges except Mr Justice Baldwin, who concurred in the view that the case was not one for a mandamus, but declined to give any opinion on the merits. It is quite apparent, that both Chief Justice Taney and Mr. Justice Story no longer adhered to the opinions they had before expressed, as to the proper construction of the acts of congress on the subject, and had come to concur with Judge Betts.

From that time the question remained at rest. Congress passed no further act on the subject, until 1866. On the 18th of July, 1866, an act was passed, the 31st section of which (14 Stat. 186) provides, that "all goods, wares, merchandise, or property of any kind, seized under the provisions of this act, or any other law of the United States relating to the customs, shall, unless otherwise provided for by law, be placed and remain in the custody of the collector, or other principal officer of the customs of the district in which the seizure shall be made, to abide adjudication by the proper tribunal, or other disposition according to law." It is insisted, on the part of the United States, in advocacy of the motion now made by them, that this provision of the 31st section of the act of 1866 has the effect to require that the custody of all property seized under the customs laws shall remain in the custody of the collector, notwithstanding it is libelled in a suit in rem, in this court, and process is issued to the marshal to attach it, and that it shall so remain until it is adjudicated upon finally in the suit.

It can hardly be necessary to vindicate the correctness of the construction put by Judge Betts, and by the justices of the supreme court, upon the provisions of law on this subject, as they stood before the act of 1866. No decision to the contrary of such construction can now be cited; and I am satisfied it was the correct view. The custody in the marshal, intended by the 4th section of the act of 1792, and the custody in the collector, intended by the 69th section of the act of 1799, were two different descriptions of custody. The custody in the marshal was a custody obtained through the process of the court. When such custody was given, in 1792, the provision of the 49th section of the act of 1790, before referred to, still remained in force, and it never could have been supposed, for a moment, that the general provision of the 4th section of the act of 1792, giving to the marshal the custody of all vessels and goods seized by any officer of the revenue, intended that he should have such custody in any case except where he was called upon to take such custody by the process of the court. As to custody after seizure by the collector, and before the issuing of the process of the court to the marshal, such custody remained in the collector, under the act of 1790. But, when such process was issued, the collector was to yield the custody to the marshal. The two enactments were to stand together. The act of 1792 was an act to regulate processes in the courts, and to provide compensation for its officers, and for jurors and witnesses. For the custody which, under it, the marshal was to have, he was to be allowed such compensation as the court might judge reasonable— that is, the court issuing the process under which such custody should be taken. The court had nothing to do with adjudging a compensation to the collector, or a compensation for any custody except a custody taken and held under process. The custody of the collector was a custody obtained through the power of seizure given to him by law, outside of process issued on a direct proceeding in rem. When the 69th section of the act of 1799 replaced, in substantially the same terms, the 49th section of the act of 1790, the 4th section of the act of 1792 was left in force, and the custody of the collector, spoken of in the act of 1799, was as distinct from the custody of the marshal, spoken of in the act of 1792, as the latter custody was distinct from the custody of the collector, spoken of in the act of 1790. When, under the act of 1799, such proceedings were had as were required by that act, to ascertain whether the goods had been forfeited, then the custody of the collector was to be given up to the marshal. The proceedings referred to were those prescribed by the 89th section of the act of 1799—libelling and prosecution in the proper court. These proceedings were, the filing of a libel or information against the forfeited property, the issuing of a writ to the marshal, commanding him to attach the property, and to give the notice required by the 89th section, and the execution of the writ by the marshal. Conk. Prac. (Ed. 1842) pp. 120, 361, note a.

Such was the law from 1799 to 1866. The practice under it was well defined. The writ, generally called a monition, commanded the marshal to attach the property, and detain the same in his custody until the further order of the court respecting the same, and to give due notice, &c. Conk. Prac. (Ed. 1842) p.590. Under such a monition, the practice has been for the marshal to arrest the property so previously seized, by taking it into his custody. Id. p. 361. Judge Conkling, in his treatise (Ed. 1842, p. 120, note a), says, that, under the 4th section of the act of 1792, and the 69th section of the act of 1799, the marshal is, by virtue of the monition and attachment, to take into his custody all other descriptions of property, as well as vessels. Judge Betts, in his Admiralty Practice (Ed. 1838, p. 68, § 12), says, in regard to

property seized as forfeited for violations of the laws of the United States, that, after being seized, it is to be proceeded against by libel, as in ordinary cases. He adds: "It seems to be considered, in some of the United States courts, that the collector, on his seizures, holds the property until final condemnation and sale, and, during the pendency of proceedings in court respecting it, becomes virtually the officer of the court in regard to the property seized. A different interpretation is put upon the various acts of congress, in this court, and the collector, like the master of the public ship, is considered as holding the property under his seizure only until 'seized, libelled and prosecuted in the proper court,' pursuant to the directions of the statute, his custody thus becoming qualified, and being superseded and discharged when the process of the court acts upon the property. The act of May 8th, 1792 (section 4), applies to the case after the property is 'seized, libelled and prosecuted,' as directed by the act of March 2d, 1799 (section 89)." He also says (page 69) that the attachment against the property is served by the marshal, by his taking the property into his own custody. By rules 181 and 13 of this court, adopted in 1838, the proper process, on an information in rem, was defined to be an attachment in rem, united with a monition. By rules 183 and 32, the return of the marshal, in case of process in rem, must express the day of the seizure of the property. Rules 49 and 50 prescribe fees to the marshal for the custody of vessels and goods "seized by any officer of the revenue, and seized, libelled and prosecuted for forfeiture."

In regard to the provision of rule 172 of this court, that, in summary proceedings in rem, in behalf of the United States, where the matter in demand does not exceed fifty dollars, and the goods are under seizure by the collector, and in his possession, the clerk may, at the instance of the district attorney, omit the attachment clause in the monition issued, and the provision of rule 173, that if, in such case, the monition also contains an attachment, and the marshal returns that the goods are in the custody of the collector, he shall stand acquitted of all responsibility for their safe keeping or production to answer the decree, and the provision of rule 174, that, in such case, the service of the monition shall be by leaving a copy or notice thereof with the collector or person having the goods in keeping, and also making like service on the owner or his agents, if known to the marshal and resident in the city, which rules apply to process on informations on seizures both upon land and water (rules 179, 183), Judge Betts states, in his Admiralty Practice (page 81), that the court, under those rules, proceeds upon the assumption, that the collector, by his own assent and that of the district attorney, or by the presumption of law, becomes, quoad hoc, the officer of the court, subject to its jurisdiction, respecting the detention and disposal of the property seized, but that such practice is contrary to the usual procedure of the court, and that such authority over the collector would be cautiously exercised, if objected to by the collector. In view of what had been held to be the law as to the custody, under the act of 1792, after process, of goods seized for forfeiture, and libelled and prosecuted in rem, it seems very doubtful whether the practice thus prescribed in respect to summary proceedings in rem, in behalf of the United States, was warranted by law, and whether the power assumed, under the 7th section of the act of March 2, 1793 (1 Stat. 335), to prescribe such practice, as a regulation of the practice of the court, was not outside of the authority granted by that section, because "repugnant to the laws of the United States." At all events, such practice could not stand, consistently with the provisions of the admiralty rules of December term, 1844, prescribed by the supreme court, hereafter referred to.

By the 9th section of the judiciary act of September 24, 1789 (1 Stat. 77), exclusive original cognizance is given to the district courts, of "all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation or trade of the United States, where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burthen, within their respective districts, as well as upon the high seas," and also of "all seizures on land, or other waters than as aforesaid, made, and of all suits for penalties and forfeitures incurred, under the laws of the United States." Prosecutions following such seizures on waters so navigable, are held to be civil causes of admiralty and maritime jurisdiction, and, therefore, triable without the intervention of a jury; but prosecutions following other seizures are held to be suits at common law, within the 7th amendment to the constitution, and, therefore, not triable otherwise than by a jury. In the case of a seizure on the high seas or on waters so navigable, the case being then strictly a case of admiralty jurisdiction, the first pleading filed by the prosecution is properly known as a libel of information; and, in the case of a seizure on land or on waters not so navigable, the case being one not strictly of admiralty jurisdiction, such first pleading is properly known as an information. Conk. Prac. (Ed. 1842) p. 350. Rules 1 and 5 of this court speak of libels and informations, and rule 179 speaks of "informations on seizures upon land or water." Judge Betts, in his Admiralty Practice (Ed. 1838, p. 69), speaks of libels or informations filed against property seized as forfeited. An examination of text books and decisions shows that the pleadings filed to forfeit property seized have been generally called, indifferently, libels of information and informations, whether the seizures were on land or on water.

The 6th section of the act of August 23, 1842 (5 Stat. 518), provides, that the supreme court shall have power, among other things, to prescribe and regulate and alter the forms and modes of framing libels and other pleadings, in suits at common law or in admiralty pending in the circuit and district courts of the United States, and generally the forms and modes of proceeding to obtain relief, and generally to regulate the whole practice of the said courts. Under this authority, the supreme court, at its December term, 1844, promulgated certain rules, which took effect from and after September 1st, 1845, as rules "for the regulation and government of the practice of the circuit and district courts of the United States in suits in admiralty on the instance side of the courts." The 1st rule shows that the rules cover all civil causes of admiralty and maritime jurisdiction commenced by libel or libel of information. The 22d rule provides, that "all informations and libels of information upon seizures for any breach of the revenue, or navigation, or other laws of the United States, shall state the place of seizure, whether it be on land or on the high seas, or on navigable waters within the admiralty and maritime jurisdiction of the United States." All of those rules, unless altered by the act of 1866, apply to the present case, because, this being a seizure on waters navigable from the sea by vessels of ten or more tons burthen, is, within all the decisions. from the case of La Vengeance, 3 Dall. [3 U. S.] 297, to the present time, a civil cause of admiralty and maritime jurisdiction, and it is a case on the instance side of the court, and not a case in prize. The 9th of those rules provides, that, "in all cases of seizure, and in other suits and proceedings in rem, the process, unless otherwise provided for by statute, shall be by a warrant of arrest of the ship, goods or other thing to be arrested; and the marshal shall thereupon arrest and take the ship, goods or other thing into his possession for safe custody, and shall cause public notice thereof and of the time assigned," &c., to be given. This rule provides for process of arrest, "unless otherwise provided for by statute," and prescribes, that, on such process, the marshal must take the property into his possession, for safe custody. His right and duty, therefore, prior to the passage of the act of July 18th, 1866, to take custody of property under process from the court, in cases of seizures cognizable in the admiralty, were clearly provided for, not only by the act of 1792, notwithstanding the act of 1799, but also by the 9th rule in admiralty; and his right and duty, prior to the passage of such act of 1866, to take custody of property, under process from the court, in cases of seizures not cognizable in the admiralty, were clearly provided for by the act of 1792, giving him the custody, under and after process, of "all vessels and goods seized by any officer of the revenue."

The question, then, is—What effect has the 31st section of the act of 1866 on the prior legislation, and on the 9th rule in admiralty, in respect to this case? The 43d section of that act (page 188) repeals all acts and parts of acts "conflicting with or supplied by" that act. The 31st section relates to all seizures under any law relating to the customs—to seizures of vessels as well as to seizures of other property—to seizures on land as well as to seizures on the water. The 69th section of the act of 1799 only related to seizures of goods, wares and merchandise. It did not include vessels. Vessels and goods both were named in the 4th section of the act of 1792, but the collector never claimed the custody of vessels, under the act of 1799. The act of 1866, however, covers "all goods, wares, merchandise or property of any kind," seized under any law relating to customs. It declares, that such property shall, "unless otherwise provided for by law," be placed and remain in the custody of the collector or other principal officer of the customs of the district in which the seizure shall be made, "to abide adjudication by the proper tribunal, or other disposition according to law." When congress made this enactment, provision by law existed for the custody of property after its seizure by officers of the customs and before prosecution. In respect to a vessel, it would necessarily remain in the custody of the customs officer seizing and securing it under section 70 of the act of 1799, until a suit to enforce the forfeiture should be commenced against the vessel, under section 89 of that act. In respect to goods, wares and merchandise, they would, under section 69 of that act, be put by the seizor into, and remain in, the custody of the collector or his appointee, until the commencement of a suit against them to enforce the forfeiture of them. In respect to both classes of property, the marshal would, under the act of 1792, take custody of the property, under process in the suit. Now, certainly, on this state of facts, it must be held, that congress intended, by the act of 1866, to make some change in respect to the custody of property seized. Was the change intended only a change of the custody of vessels, so that, before and until suit, they should go into and remain in the custody of the collector or his appointee, instead of remaining in the custody of their seizor? I think not. Yet that is the only change made, if the marshal is to take custody, as before the act of 1866, of all seized property, after process. The act of 1799, as construed, gave custody of goods to the collector only until the institution of proceedings against them by suit. The act of 1866 gives to the collector custody of all seized property—vessels and goods—"to abide adjudication by the proper tribunal, or other disposition according to law." The words, "to abide adjudication by the proper tribunal" mean, to abide or await a determination by such tribunal as to whether the thing seized is forfeited or not—to remain in the custody of the collector until such tribunal makes such

determination, and while the proceedings are going on in the suit brought to obtain such determination. When we speak of an adjudication, we mean a judgment determining the right; and congress must be regarded as having intended that meaning.

But, it is claimed, under the words, "other disposition according to law," that the custody of the property is to remain in the collector only to abide some lawful disposition of the property, and that the taking of the property by the marshal under process in the suit was a disposition of it according to law, provided for at the time the act of 1866 was passed, and, therefore, such taking of it must, under the act of 1866, be regarded as a disposition of it according to law. What is the meaning of the word "disposition," as used in the act of 1866? There were in existence, at that time, several modes of finally disposing of seized property, both before and after suit. The forfeiture of it might be remitted by the secretary of the treasury, under the 1st section of the act of March 3d, 1797 (1 Stat. 506), or under the 16th section of the act of July 18th, 1866. It might be delivered to the claimant on appraisement and bond, under the 89th section of the act of 1799. It might, if not over $500 in value, be sold by the collector, under the 12th and 15th sections of the act of July 18th, 1866. These dispositions of it would be dispositions of the same character with a disposition of it by the court by a sale of it after condemnation, as provided for by the 90th section of the act of 1799. They would finally dispose of the property as a res, as between it and the United States. I think these and these only are the dispositions intended by the word "disposition" in the act of 1866—dispositions ejusdem generis with a disposition by adjudication—final dispositions of the res—not a mere change of its custody before final disposition.

Then comes the phrase, "unless otherwise provided for by law." Property seized is, "unless otherwise provided for by law," to remain in the custody of the collector, to abide adjudication, &c. If it be held, that the phrase, "unless otherwise provided for by law," has the effect to leave in force the provision as to custody by the marshal after process, then the provision of the act of 1866 makes no change except to put vessels into the custody of the collector before and until process. These words, "unless otherwise provided for by law," must be construed in connection with the provision of section 43 of the same act, repealing all "parts of acts conflicting with or supplied by this act." Custody until adjudication, and after as well as before process, is supplied by the act of 1866. It was supplied by previous legislation. Custody after process was, by previous legislation, given to the marshal. It is, by the act of 1866, given to the collector. The former provision for such custody by the marshal after process conflicts with the new provision as to custody by the collector after process. "Every affirmative statute is a repeal by implication of a precedent affirmative statute, so far as it is contrary thereto." Dwar. St. 673. The words, "unless otherwise provided for by law," cannot be held to embrace the prior provisions of law which are thus in conflict with and supplied by the act of 1866. On the contrary, such prior provisions must be held to be superseded and repealed.

Nor is the question one which involves the jurisdiction or authority of the court over the res that is prosecuted, or its jurisdiction over the suit in rem. The property having been seized as forfeited, and the seizure having been adopted by the United States, by bringing the suit in rem to enforce the forfeiture, the court has jurisdiction to decree such forfeiture, and jurisdiction and authority to order the property, under the 89th section of the act of 1799, to be delivered to the claimant on appraisement and bond and the payment of duties, and to cause the property, under the 90th section of the same act, if not bonded, to be, when condemned, sold by the marshal or other proper officer of the court, even though the property remains in the custody of the collector until adjudication. The views of Mr. Justice Story and of Chief Justice Taney, before cited, are sound in reference to a case where in fact the collector and not the marshal is to have custody after process. The property is, in contemplation of law, after process, in the custody of the court, although the marshal does not take it into his custody, provided it remains in custody, under a seizure for forfeiture, while the proceedings in court against it are pending. The collector is its official keeper, for the court, after process, and the court has, after process, as full control over it in the hands of the collector, and as full power to compel obedience by the collector to all orders of the court respecting it, as if it were in the hands of the marshal, under process. Such appears to have been the view of Judge Betts in respect to custody by the collector after process, under the rules of this court in regard to summary proceedings in rem in behalf of the United States, where the matter in demand did not exceed fifty dollars; and it is a necessary view in respect to all property prosecuted for forfeiture, where the custody after process is given by statute to the collector.

It follows, that not only is the provision of the 4th section of the act of 1792 abrogated by the act of 1866, but the 9th rule in admiralty, in view of the provision of the act of 1866, does not apply to cases like the present one. Such cases are, in the language of that rule, "otherwise provided for by statute."

Such being the interpretation of the act of 1866, what relief is to be granted on the

motion in this case? I think the proper course is, to amend the alias monition, so that it shall command the marshal to attach the property by leaving with the collector or other person having the property in custody a copy of the monition, and also a notice requiring such collector or other person to detain such property in custody until the further order of the court respecting it, and to give due notice, &c. This will be the proper form of monition to be issued in all cases where property is under seizure as forfeited for violations of the customs laws, and is in the custody of the collector or other principal officer of the customs.