TWO HUNDRED AND FIFTY TONS OF SALT LADEN ON BOARD
THE SCHOONER BARBARA F. LATIMER.

*(District Court, S. D. New York.  December, 1880.)*

**1. PRACTICE—ATTACHING GOODS IN POSSESSION OF COLLECTOR OF CUSTOMS—ADMIRALTY JURISDICTION—REV. ST. 2981—SALE ON VEND. EX. SUBJECT TO DUTIES.**

Where a libel *in rem* to recover freight was filed against a cargo of salt which the consignee had refused to accept, and the collector of customs had taken it into his custody to secure payment of duties, and while in his possession the monition was served on him by the marshal by exhibiting to him the original process, leaving with him a copy and delivering a notice of attachment to the keeper of the United States public store where part of the salt was and whither the rest was in course of removal from the vessel, and the marshal made return of the monition that he "was unable to take said property into his custody otherwise than as aforesaid for the reason of the custody of said collector," and an interlocutory decree on default having been entered, and the amount of the libellant's claim and lien for freight ascertained, the libellant applied for a final decree and order that a writ *vend. ex.* issue for the sale of the salt, subject to the payment of the duties and expenses due the United States.

*Held, ex parte,* that the court acquired jurisdiction over the property by the service of the process as made, and could order the goods sold, subject to the claims of the United States for duties and expenses.

*Taylor v. Carryl,* 20 How. 583, and *Harris v. Dennie,* 3 Pet. 292, referred to.

In Admiralty.

*W. R. Bebee,* for libellant.

CHOATE, D. J.  This is a libel *in rem* for freight against the cargo which the consignee has refused to accept.  The marshal, in attempting to serve the process, found the cargo partly on the vessel and partly in the United States public stores, whither it was in course of removal by the collector of the port, who had taken possession of it for the enforcement of the rights of the United States to the duties upon its importation.  The process was served by a notice of the attachment delivered to the storekeeper, and by exhibiting to the collector the original process and leaving with him a copy of it.  The marshal, in making return of this service, adds that he "was unable to take said property into his custody oth-

erwise than as aforesaid, for the reason of the custody of said collector." An interlocutory decree having been entered by default, and the amount of the libellant's claim and lien for freight having been ascertained, the libellant now applies for a final decree and an order that a writ of *vend. ex.* issue for the sale of the salt, subject to the payment of duties and expenses due to the United States. Upon the suggestion of the marshal, who questions the jurisdiction of the court over the goods under the service of the process made, and which was the only service practicable, I have examined the question involved, though without that aid which the court receives in a contested case. It is suggested that there has been no such seizure of the *res* as is essential to give the admiralty court jurisdiction. It is also suggested that the possession of the collector is so far absolute as to exclude any possession or control over the goods by the marshal under his process. It is not, however, universally true that the jurisdiction of a court of admiralty depends upon a seizure of property in the sense of its actual manucaption by the officer of the court, although the mode of seizure of chattels is usually in that form. Jurisdiction is acquired, however, over things not capable of actual manucaption, as debts and credits, by the process of foreign attachment; and under a statute authorizing the *seizure* and confiscation of enemies' property, including corporate stocks, but prescribing no mode of seizure, while it was held that there must be a seizure to give the court jurisdiction over the property, yet it might be such as the nature and situation of the property admitted of, and that service of the monition on an officer of the corporation, with notice of the seizure, was a sufficient seizure to uphold the jurisdiction. *Miller* v. *U. S.* 11 Wall. 298. Williams & Bruce, in their work on the Jurisdiction and Practice of the High Court of Admiralty, 193, say: "The cargo may be proceeded against in respect of any liability attaching to it, etc. If the cargo be on board the ship, and is proceeded against specifically and named in the warrant, or if it is not named in the warrant, but is proceeded against in respect of freight due for the transportation thereof, the arrest of the ship arrests the

cargo. If the cargo has been landed and warehoused, a separate arrest of it must be made. If the marshal or his substitutes are denied access to the warehouse where the cargo is, the arrest may be made by showing the original warrant to the warehouse keeper and leaving a copy with him."

In *Miller* v. *U. S. ut supra*, 296, the court say: "The modes of seizure must vary. Lands cannot be seized as movable chattels may. Actual manucaption cannot be taken of stocks and credits. But it does not follow from this that they are incapable of being seized within the meaning of the act of congress. Seizure may be either actual or constructive. It does not always involve taking into manual possession. Even in case of chattels movable, taking part of the goods in a house under a *fi. fa.*, in the name of the whole, is a good seizure of all. An assertion of control, with a present power and intent to exercise it, is sufficient." The right which this libel is brought to enforce is a maritime lien for the freight due on transportation of the goods. It is a right which, as against the owner or consignee of the goods, entitles the owner of the vessel to retain them till the freight is paid. His surrender of their custody to the collector as security for the duties, which is a paramount claim, but one which the owner of the vessel cannot himself discharge, does not impair his rights or his lien against the owner. He cannot hold the goods against the government while the duties are unpaid; but, if the duties were paid, it seems that his lien and consequent right of possession till payment of the freight would still be perfect and unimpaired by his enforced delivery of the goods to the collector. It was apparently in recognition of this right of the ship-owner that congress passed the act providing that the ship-owner might notify the collector that the freight was unpaid, and that in such case the goods should not be delivered to the consignee upon his paying duties unless the freight is paid. Rev. St. 2981. The custody and possession which the collector has for the enforcement of the payment of the duties, though they cannot of course be interfered with, are therefore not so absolute as to exclude all assertion of "control, with a present power and intent to exer-

cise it," on the part of the owner of the vessel, who stands ready, subject only to the rights of the government, to retake the goods for the enforcement of his lien. And the service of the monition, such as the situation of the goods permits, especially at the suit of a party having this right over them, is sufficient, it seems to me, to give the court jurisdiction. By invoking the power of the court to enforce his claim, the libellant at least puts it in the power of the marshal to assert that control over the goods which he himself now possesses. Ordinarily, indeed, a sale of property by an admiralty court is a sale free from all claims and interests whatever; but not necessarily so, if the court has acquired jurisdiction, and there be some interest which, for cause, is not to be cut off by the sale. I see no difficulty in selling this cargo, subject to the claims of the United States, if the seizure was sufficient to give jurisdiction. The purchaser may then pay the duties and obtain possession of the goods.

The case of *Taylor* v. *Carryl*, 20 How. 583, is referred to as an authority adverse to the jurisdiction. It is not to be denied that there are expressions in the opinion of the court in that case which make against the jurisdiction, but no question arises here, as in that case, of a possible conflict between courts of different jurisdictions. Subsequent decisions appear to limit somewhat the application of that case, and I do not think it is controlling against the jurisdiction in the present case. See *The Reindeer*, 2 Wall. 402; *Buck* v. *Colbath*, 3 Wall. 341; *The Joslyn and The Midland*, 9 Ben. 119.

It was, indeed, held in *Harris* v. *Dennie*, 3 Pet. 292, that the custody of the collector was such as excluded any attachment of the goods on mesne process out of a state court; that such an attachment, "being repugnant to the laws of the United States," was void. I do not think there is the same repugnancy between that possession of the collector and the service of the monition by the marshal at the suit of the ship-owner, whose right and qualified control over the goods, subordinate to the right and control of the government, the laws of congress recognize and protect; nor does the exercise of the jurisdiction by this court over the goods, subject to the rights of

the government, involve the danger of conflicting rights and claims, and the practical inconveniences pointed out in that case. While I entertain some doubt on the question, I am of opinion that the court has acquired jurisdiction, and can order the cargo to be sold, subject to the claims of the United States, for duties and expenses. See, also, *U. S.* v. *One Case of Silk,* 4 Ben. 526; *Opin. of Taney, Att'y Gen,* 2 Opin. Att'ys Gen. 477, 496. Unless the jurisdiction exists, the ship-owner is practically remediless. He cannot compel a sale of the goods for duties, and, in most cases like the present, if he cannot libel them he must stand by and see their whole value absorbed in storage and other charges before they will be sold by the collector.