## MISSOURI VALLEY BRIDGE & IRON CO. v. BLAKE.

(Circuit Court of Appeals, Fourth Circuit. February 11, 1916.)

### No. 1387.

1. CORPORATIONS ⬗668(14)—PROCESS—CONSTRUCTIVE SERVICE—ATTACHMENT AND PUBLICATION.

Under Code W. Va. 1913, c. 124, § 11 (sec. 4747), a state court acquired jurisdiction in an action against a foreign corporation, though it was a nonresident of the state and had no officer or agent within the county upon whom process could be served, by a levy under an attachment, and the execution of an order of publication.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2624, 2625; Dec. Dig. ⬗668(14).]

2. REMOVAL OF CAUSES ⬗11—EFFECT OF REMOVAL—JURISDICTION.

Where a state court had acquired jurisdiction of an action against a nonresident foreign corporation having no officer or agent in the county, by a levy under an attachment and the execution of an order of publication, the jurisdiction was not lost by the removal of the cause to a federal court, though that court could not have acquired original jurisdiction by attachment and publication.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 29–31; Dec. Dig. ⬗11.]

3. EXEMPTIONS ⬗118—PROPERTY SUBJECT TO ATTACHMENT—PERSONS ENTITLED TO ASSERT IMMUNITY.

Rev. St. § 3753 (Comp. St. 1913, § 6950), provides that, whenever any property in which the United States have or claim an interest shall be

---

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

231 F.—27

attached for the satisfaction of any claim against it, the Secretary of the Treasury may direct the Solicitor of the Treasury to cause a stipulation to be entered into by the proper district attorney for its discharge from such attachment, but that nothing therein contained shall be construed as recognizing or conceding any right to enforce by attachment any claim against any property held or owned or employed by the United States. *Held,* that the statute is designed for the protection of the government, and can be invoked only by it, and, assuming that the United States had an interest in the property of a contractor employed on a contract with the United States, the immunity from attachment could be asserted only by the government, and not by the contractor, in an action against it.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 139; Dec. Dig. ⊚⊸118.]

4. MASTER AND SERVANT ⊚⊸256(1)—ACTIONS FOR INJURIES—SUFFICIENCY OF DECLARATION.

Where, in an employé's action for injuries, though there was some lack of particularity in the averments of the declaration, and it possibly failed to locate with precision and certainty the negligent act which caused the injury, it was sufficiently definite to apprise the defendant of the ground upon which it was claimed to be liable, and to permit the introduction of testimony as to all the pertinent facts connected with the accident, a demurrer was properly overruled.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 809; Dec. Dig. ⊚⊸256(1).]

5. APPEAL AND ERROR ⊚⊸1050(1)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Conceding that it is the general rule that the admission of opinion testimony as to the incompetency of a defendant's employé is reversible error, it was not reversible error to permit a witness to give his opinion that defendant's engineer was incompetent, where he made a disclosure of facts, independent of the opinion, from which the jury might have found that the engineer was not competent, and the opinion expressed was rather a summing up of impressions derived from what he had seen and learned.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Dec. Dig. ⊚⊸1050(1).]

6. MASTER AND SERVANT ⊚⊸270(14)—ACTIONS FOR INJURIES—ADMISSION OF EVIDENCE.

While it is the general rule that negligence on the part of an employer cannot be predicated upon the use of a particular appliance, by merely showing that there are other appliances which are believed to be better or less dangerous, this rule was not violated where a witness merely stated that upon going to work for the employer he observed a difference between its method and the methods of a former employer which attracted his attention.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 924; Dec. Dig. ⊚⊸270(14).]

7. APPEAL AND ERROR ⊚⊸1050(1)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Every theoretical error in the course of a trial in the admission of evidence is not ground for reversal, and mistakes which do not involve injustice should ordinarily be disregarded.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Dec. Dig. ⊚⊸1050(1).]

8. TRIAL ⊚⊸260(1)—INSTRUCTIONS COVERED BY THOSE GIVEN.

Where the trial judge delivered a general charge, which might justly be regarded as an adequate and impartial statement of the issues and evi-

⊚⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dence, it was not error to refuse requested instructions, which, so far as they were correct and material, were embraced in the general charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. ☞260(1).]

**9. MASTER AND SERVANT** ☞265(8)—**ACTIONS FOR INJURIES—RES IPSA LOQUITUR.**

An employer was building a dam, and was about to pump the water out of a cofferdam. A discharge box or flume, one end of which rested on the outer edge of the dam was being raised up and placed under a discharge pipe through which the water was to be pumped, but the arm of the derrick used in placing it was not long enough to swing it into position beneath the pipe, and plaintiff and another employé went under the raised end to attach another cable, and while there the discharge box eased down, injuring plaintiff. The cable or rope in use did not break or slip, but the spool or drum around which it was wrapped revolved slightly. The engine was not dogged, and there was testimony that, if it had been dogged, the accident could not have happened. *Held* that the maxim, "res ipsa loquitur," was applicable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 898, 955; Dec. Dig. ☞265(8).]

In Error to the District Court of the United States for the Northern District of Virginia, at Wheeling; Alston G. Dayton, Judge.

Action by Charles Blake against the Missouri Valley Bridge & Iron Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles McCamic, of Wheeling, W. Va. (J. M. Clarke and McCamic & Clarke, all of Wheeling, W. Va., on the brief), for plaintiff in error.

T. S. Riley, of Wheeling, W. Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. This is a negligence action of familiar type, and the facts in outline appear to be these:

Plaintiff in error, defendant below and hereinafter so called, was building a dam for the United States government across the Ohio river near Woodland, W. Va., and Blake, who brings the suit, was a common laborer employed in that work. A large cofferdam had been constructed, extending up and down the river, and the general purpose of the work in hand at the time of the accident was to pump the water out of the cofferdam. Blake was engaged with several others in placing a heavy discharge box or flume in such position that one end would be raised up and placed under the discharge pipe, through which the water was to be pumped from the cofferdam, and the other end remain on the outer edge of the dam, so that the water would be carried down into the river. The pump barge which supported the discharge pipe was inside the cofferdam, while outside in the river was the derrick boat on which were the engine and hoist used in placing the discharge box. The width of the top of the cofferdam was about 16 feet. It was found that the arm of the derrick was not long enough to swing the discharge box into position beneath the pipe, and it became necessary to attach another cable to the box in order to haul it into place by means of a block and tackle. The inner end of the

box was elevated, the other end resting on the outer edge of the cofferdam wall, and Blake with another man went under the raised end to attach a sling or cable which was to be used in pulling the box into place with the block and tackle moved by the engine on the derrick boat. While Blake was making this attachment, and from some cause not certainly disclosed by the evidence, the discharge box "eased down" about 6 feet, and he was struck and badly injured. The cable or rope in use did not break, nor did it slip along the discharge box; but it appears that the spool or drum around which the rope was wrapped near the engine revolved a little, so that the rope slackened or unwound, with the result that the discharge box was suddenly lowered and hit the plaintiff as it descended. It is admitted that the engine was not "dogged," and there was testimony to the effect that if it had been dogged the accident could not have happened. Blake testified that before going under the discharge box for the purpose mentioned he asked Corliss, defendant's general superintendent who was there directing the work, whether the load was dogged, and Corliss answered: "It is all right; go ahead."

There are 39 assignments of error, but the questions raised, many of which appear to be highly technical, fall into three or four groups and may be discussed without separate mention.

[1-3] First is a question of jurisdiction. Defendant is a Kansas corporation. The suit was begun in the circuit court of Marshall county, W. Va., where the plaintiff resides. The record does not show that any officer or agent of defendant upon whom process could be served was found in that country. Upon an affidavit that defendant was a foreign corporation and nonresident of the state, an order of attachment was issued under which certain machinery and property, used by defendant in constructing the dam, was levied upon by the sheriff, and constructive service obtained, or sought to be obtained, by publication under the provisions of the West Virginia Code (Code 1913, c. 124, § 11 [sec. 4747]). Shortly after the attachment was executed the defendant gave a bond and the property was released. Later a plea in abatement was filed against the order of attachment on the ground that defendant was constructing a work of internal improvement for the United States; that the property seized was necessary for the performance of that work, and therefore, under section 3753 of the Revised Statutes (Comp. St. 1913, § 6950), not subject to attachment. Afterwards the case was removed into the United States District Court on the ground of diverse citizenship. That court sustained plaintiff's demurrer to the plea in abatement and also overruled defendant's demurrer to the declaration.

We are of opinion that the state court had acquired jurisdiction by the levy under the attachment and the execution of the order of publication. This jurisdiction was not lost by removal to the federal court, although the latter court could not have acquired original jurisdiction by attachment and publication. Craddock v. Fulton (C. C.) 140 Fed. 426; Courtney v. Pradt, 196 U. S. 89, 25 Sup. Ct. 208, 49 L. Ed. 398. Moreover, the ground upon which the attachment was sought to be set aside is untenable. Even if it be granted that the

United States had an "interest" in the property seized, within the meaning of the statute, which seems to us extremely doubtful, it is evident that the statute is designed for the protection of the government and can be invoked, as its provisions plainly indicate, only by the United States. In other words, the immunity from seizure in a case like this can be asserted by the government, but not by the contractor. The demurrer to the plea in abatement was properly sustained.

[4] The declaration alleges negligence in three respects: (1) Negligence in carrying on the work and in the employment of incompetent servants; (2) negligence in not adopting the proper method of doing the work and thereby furnishing an unsafe place to work; and (3) negligence resulting from the use of defective machinery. The sufficiency of the allegations is challenged on the ground, first, that the negligence complained of was operative negligence and therefore the facts averred do not make out a case of liability; second, that the declaration fails to show that the accident was caused by the negligent acts of incompetent servants; and, third, that it does not show that the alleged faulty method of doing the work was the cause of the accident. We deem it unnecessary to enter upon a discussion of these propositions and content ourselves with expressing the opinion that the declaration states a cause of action. There may be some lack of particularity in the averments, and the pleading perhaps fails to locate with precision and certainty the negligent act which caused the plaintiff's injury, but it was sufficiently definite to apprise the defendant of the grounds upon which it was claimed to be liable and to permit the introduction of testimony as to all the pertinent facts connected with the accident. We have examined the authorities cited by defendant and are satisfied that they do not sustain its contention. In our judgment the court below did not err in overruling the demurrer to the declaration.

[5] The next 20 assignments are based upon exceptions to the admission or exclusion of testimony. Some of these objections were made on the ground of alleged inadmissibility under the declaration; but this point was involved in overruling the demurrer and need not be further discussed. Of other objections it is enough to say that the rulings challenged were not incorrect or were quite immaterial and harmless. With reference to the alleged incompetency of defendant's servants, and particularly the incompetency of the engineer, Wortham, it is urged as ground for reversal that plaintiff's witness was allowed to give his opinion that the engineer was incompetent, and decisions are cited which hold that the admission of such opinion testimony is reversible error. This rule of evidence may be conceded, but it does not apply in this case because the witness on this point, taking his entire testimony into account and the fair import of his statements, appears to have made a disclosure of facts, independent of any expressed opinion, from which the jury might have found that the engineer was not competent to perform the service in which he was then engaged. In other words, what is charged as inadmissible opinion was rather a summing up of impressions derived from what

had been seen and learned. In 17 Cyc. 60, where numerous authorities are cited, the rule is stated as follows:

"If a statement of inference, conclusion, or judgment is accompanied by an enumeration of the facts on which it is based, the error, if any, is usually harmless; as the jury can estimate the true probative value of the statement. Thus, where a witness states, merely by way of summary or introduction, his mental induction or deduction from facts which he gives in detail, the error does not furnish cause for reversing a judgment."

[6] Much the same may be said of the testimony offered to show that an improper method was adopted for placing the discharge box in position. The general rule appears to be that negligence cannot be predicated upon the use of a particular appliance by merely showing that there are other appliances which are believed to be better or less dangerous. We are of opinion that this rule was not disregarded. The witness to whose testimony objection was made did not compare defendant's methods with those of the employer for whom he had formerly worked, nor did he say that this employer's methods were better; he only said that upon coming to work for defendant he observed a difference which attracted his attention.

[7] In the trial of a case of this kind it is hardly to be expected that some question will not be asked or reply made which, taken by itself, would be open to objection; and if every theoretical error led to reversal there would be no end to litigation. But the verdict of a jury is not to be lightly set aside, and mistakes which do not involve injustice should ordinarily be disregarded.

[8] The remaining assignments of error are based upon the refusal of numerous instructions requested by defendant, including the direction of a verdict in its favor. We have carefully examined these exceptions and are satisfied to dispose of them without particular mention. The learned trial judge delivered a general charge to the jury, as he had the undoubted right to do, and this charge may justly be regarded as an adequate and impartial statement of the issues and evidence. The propositions of law laid down are not open to serious criticism and they cover all the important questions presented by the testimony. Of the specific instructions refused, except those which are mere statements of abstract principles, it suffices to say that so far as they are correct and material they appear to be embraced in the general charge. The exceptions here considered must therefore be held not well taken, under the familiar rule which the Supreme Court has stated as follows:

"When the court instructs the jury in a manner sufficiently clear and sound as to the rules applicable to the case, it is not bound to give other instructions asked by counsel on the same subject, whether they are correct or not." Iron Silver Mining Co. v. Cheesman, 116 U. S. 530, 6 Sup. Ct. 481, 29 L. Ed. 712.

"If, in regard to any particular subject or point pertinent to the case the court has laid down the law correctly, and so fully as to cover all that is proper to be said on the subject, it is not bound to repeat this instruction in terms varied to suit the wishes of either party." N. W. Insurance Co. v. Muskegon Bank, 122 U. S. 502, 7 Sup. Ct. 1221, 30 L. Ed. 1100.

. [9] The principal question is raised by the motion for an instructed verdict. It may be admitted that the proof of negligence is not altogether convincing, but we think enough was shown to warrant submission to the jury. It is obviously a case where somebody blundered, and "res ipsa loquitur" seems an applicable maxim. We find no sufficient reason for disturbing the verdict.

Affirmed.