## Combined Raw Materials, Inc., v. Giramberk et al.

*J. J. Davis*, for plaintiff.

*Krusen, Evans & Shaw*, for garnishee.

BROWN, JR., P. J., May 23, 1952.—This is a rule to quash writ of foreign attachment in assumpsit. The proceeding is before the court on defendant's petition, plaintiff's answer thereto, and stipulation of counsel as to the facts.

Plaintiff, Combined Raw Materials, Inc., caused the writ to be issued out of the Court of Common Pleas No. 4 of Philadelphia, and the sheriff in company with two other persons proceeded on the same day to Pier 98 South, Philadelphia, Pennsylvania, and found 256 bales of tannery wool, property of defendant, Richard S. Giramberk, on the pier, it having been discharged from the SS Exemplar, a steamship owned by garnishee, The American Export Lines, Inc. The sheriff levied upon the goods by serving upon garnishee a true and attested copy of the writ, making known the contents thereof.

The property was delivered by defendant to garnishee in Istanbul, Turkey, for shipment to this country, and was transported here by garnishee. A bill of lading covering the shipment was issued by garnishee, consigned to the order of the Swiss Bank Corporation, New York City, New York, which (it was conceded only for the purpose of this proceeding) was in fact plaintiff's agent. At the time the writ of foreign attachment was issued and served upon garnishee, and thereafter, the bill of lading had not been surrendered to garnishee nor its negotiation enjoined. The writ was served shortly after the property had been removed from the SS Exemplar and had been stored by garnishee on the pier, which was leased and operated by Philadelphia Piers, Inc.

At the time the writ was served and the attachment made by the sheriff, and thereafter, no United States Customs entry had been made with respect to the property, no appraisal of it for United States Customs purposes had been made, and no customs duties had been determined, paid or secured with respect to it. Five days after service of the writ United States Customs General Order No. 1233 was issued by the Collector of Customs, who caused the property to be stored at Gallagher's Warehouse, a bonded warehouse at 810 South Swanson Street, Philadelphia, pursuant to this General Order.

In order for this court to obtain jurisdiction over property pursuant to a writ of foreign attachment, there must be a valid seizure of the goods. The Supreme Court of the United States has ruled under similar facts and statutory provisions that an attachment of property before customs duties are paid or secured is void. *Harris v. Dennie*, 3 Pet. 292, 304-305, 28 U. S. 290, 304. In that case, the Court said: "From the moment of their arrival in port, [from a foreign country] the goods are, in legal contemplation, in the custody of the United States; and every proceeding which interferes with, or obstructs, or controls that custody, is a virtual violation of the provisions of the act [of congress dealing with customs duties]. Now, an attachment of such goods by a state officer, presupposes a right to take the possession and custody of those goods, and to make such possession and custody exclusive. If the officer attaches upon mesne process, he has a right to hold the possession to answer the exigency of the process. If he attaches upon an execution, he is bound to sell or may sell the goods within a limited period, and thus virtually displace the custody of the United States. The act of congress recognises no such authority, and admits of no such exercise of right. . . .

"It is plain that these [present] proceedings are at war with the notion that any state officer can, in the interval, [pending payment of or entry of security for customs duties], have any possession or right to control the disposition of these goods; and the United States have nowhere recognised or provided for a concurrent possession or custody by any such officer. In short, the United States having a lien on the goods for the payment of the duties accruing thereon, and being entitled to a virtual custody of them from the time of their arrival in port until the duties are paid or secured, any attachment by a state officer is an interference with such lien and right of custody; and being repugnant to the laws of the United States, is void."

This principle was amplified in *Taylor et al v. Carryl*, 20 How. (61 U. S.) 583, 596, as follows: "To the argument, that the United States might hold for the purpose of collecting duties, and the sheriff might attach the residuary right, subject to the prior claim, the court [in *Harris v. Dennie* said]: 'The United States have nowhere recognized or provided for a concurrent possession or custody by any such [state] officer [as a sheriff].'"

"The law does not contemplate that the officers of the customs shall be involved in the litigation of private persons with reference to their debts against, or their rights in, merchandise imported; nor can they be required to hold the goods after the right of the United States shall have been discharged." 19 Op. Attys. Gen. 101, 103. "The court is always ready upon proper representations to make orders for the protection of private interests, but it cannot recognize any right whereby individuals in suits between themselves, except as specially provided by statute, may, under the form of legal process, deprive the customs officers of the United States of the possession of goods which they hold subject to the customs laws of the United

States. It is apparent that, should such practice prevail, it would result in endless litigation, and render the customs laws practically impossible of enforcement." *The Marion*, 99 Fed. 448, 450.

The foregoing principles are applicable to the instant proceeding under the Tariff Act of 1930, 19 U. S. C. §§1001 *et seq.*, the provisions of which are substantially similar to the prior legislation regulating the collection of customs duties.

In *Two Hundred and Fifty Tons of Salt*, 5 Fed. 216, 218, relied on by plaintiff, the lien of a shipowner for freight was preserved, subject to the paramount claim for customs duties, in accordance with an act of congress specifically providing therefor (see 19 U. S. C. §1564), whereas there is no act of congress for the benefit of persons such as the present plaintiff.

In *Missouri Valley Bridge & Iron Co. v. Blake*, 231 Fed. 417, 420-421, also relied on by plaintiff, it was held that an act of congress relating to government property was "designed for the protection of the government and can be invoked, as its provisions plainly indicate, only by the United States", but there is no such limitation in the acts of congress relating to customs duties. As pointed out above, the law does not contemplate that customs officers shall be involved in private litigation, and they are not required to assert in judicial proceedings that goods on which there is a lien for customs duties are immune from seizure. Indeed, in *Harris v. Dennie*, supra, the collector of customs was not asserting the immunity, but a United States marshall raised the issue in defense to an action of trover. Furthermore, it appears to us that the question is one of jurisdiction, and this can be raised by the court on its own motion.

The questions suggested under section 24 of the Bills of Lading Act of June 9, 1911, P. L. 838, 6 P. S. §74,

were argued, but it is deemed unnecessary to discuss them in view of our conclusion that the attachment was void, the court being without jurisdiction.

Rule to quash the writ of foreign attachment is made absolute.