## SCOTT *v.* NEELY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF MISSISSIPPI.

No. 314.    Argued April 15, 16, 1891.— Decided April 27, 1891.

The Circuit Court of the United States in Mississippi cannot, under the operation of sections 1843 and 1845 of the Code of Mississippi of 1880, take jurisdiction of a bill in equity to subject the property of the defendants to the payment of a simple contract debt of one of them, in advance of any proceedings at law, either to establish the validity and amount of the debt, or to enforce its collection; in which proceedings the defendant is entitled, under the Constitution, to a trial by jury.

The general proposition that new equitable rights created by the States may be enforced in the Federal courts is correct, but it is subject to the qualification that such enforcement does not impair any right conferred, or conflict with any prohibition imposed by the Constitution or laws of the United States.

*Clark* v. *Smith*, 13 Pet. 195, distinguished from this case.

*Holland* v. *Challen*, 110 U. S. 15, expl ined and shown to contain nothing sanctioning the enforcement in the Federal courts of any rights created by state law, which impair the separation established by the Constitution between actions for legal demands and suits for equitable relief.

This was a suit in equity to subject to the payment of a debt alleged to be due and owing to the complainants by the defendant George Y. Scott, certain property owned by him and other property owned by his wife and codefendant, Lottie M. Scott. The material facts out of which it arose, so far as is necessary for an intelligent consideration of the questions discussed, may be briefly stated as follows:

In 1873 the defendant George Y. Scott was in partnership with his brother, Charles Scott, in the practice of the law in Bolivar County, Mississippi. Their practice is represented to have been large and lucrative. They were also engaged in other business, in which it is said they were successful, and that their income from all sources was from twelve to fifteen thousand dollars a year. In 1876 the brothers were of opinion that lands in the Mississippi Delta would in the then near future become valuable, and were therefore desirable as investments. They accordingly made purchases of different tracts, and took deeds of the lands to their respective wives. In some cases the notes were given for part of the purchase money.

In January, 1880, the brothers dissolved their law partnership, and a partition of the lands purchased was made between their wives. Subsequently, during the same year, other lands were purchased by George Y. Scott, and the deeds taken in the name of his wife. In 1881, he also purchased a large tract, and took the deed in his own name, paying part of the purchase money in cash, and giving his promissory notes for the balance.

The lands thus purchased by him, and those held by his wife, were greatly improved by him, and put in a high state of cultivation, and valuable crops were raised on some of them. In March, 1883, to enable him to carry on the "planting business" on these lands, he arranged what is termed "a line of credit" with the firm of Brooks, Neely & Company, of Tennessee, the complainants herein, as factors and commission merchants; they to furnish him supplies and money as needed, and he to ship to them the cotton raised on the plantations, to be sold by them, and the proceeds applied to the payment of their advances. The dealings between Scott and the com-

plainants under this arrangement continued until July 6, 1885, at which time he owed them a balance of $6264.89, on account, and a note of $2000.

The present suit was commenced in March, 1886, to subject, as stated above, the property owned by the defendant George Y. Scott and other property owned by his wife, to the payment of these sums with interest, and in aid thereof to set aside as fraudulent the conveyances to the wife of the lands purchased by her husband. Issue being joined on the replications to the answers by the defendants, testimony was taken, and upon the pleadings and proofs the case was heard by the District Court of the United States for the Northern District of Mississippi, exercising the powers of a Circuit Court. It was adjudged and decreed that certain parcels of the lands, which were described, were subject to the debt due the complainants, and that they had a lien for the same from the date of filing their bill, which debt, from the report of the master, was found to be $8547.89. It was also decreed that the defendant George Y. Scott pay that sum within thirty days, and in default thereof that a commissioner of the court, appointed for that purpose and "clothed with the title to said lands," proceed to advertise them, or a sufficiency thereof, and sell the same to the highest bidder for cash, and report his proceedings to the court. From this decree the defendants appealed to this court.

*Mr. Edward Mayes* for appellants.

*Mr. W. V. Sullivan* for appellees. *Mr. F. A. Montgomery* was with him on the brief.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

This is a suit in equity to subject the property of the defendants to the payment of a simple contract debt of one of them, in advance of any proceedings at law, either to establish the validity and amount of the debt, or to enforce its collection. It is founded upon sections 1843 and 1845 of the Code of

Mississippi of 1880, being parts of the chapter which treats of the Chancery Courts of the State. They are as follows:

"Sec. 1843. The said courts shall have jurisdiction of bills exhibited by creditors, who have not obtained judgments at law, or having judgments, have not had executions returned unsatisfied, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors, as if complainant had a judgment and execution thereon returned 'no property found.'"

"Sec. 1845. The creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against bona fide purchasers before the service of process upon the defendant in such bill."

At the outset of the case the question is presented, whether a suit of this kind, where the complainant is a simple contract creditor, can be maintained in the courts of the United States. It is sought to uphold the affirmative of this position on the ground that the statute of Mississippi creates a new equitable right in the creditor, which, being capable of assertion by proceedings in conformity with the pleadings and practice in equity, will be enforced in those courts. The cases of *Clark* v. *Smith,* 13 Pet. 195, *Broderick's Will,* 21 Wall. 503, and *Holland* v. *Challen,* 110 U. S. 15, are cited in its support.

The general proposition, as to the enforcement in the Federal courts of new equitable rights created by the States, is undoubtedly correct, subject, however, to this qualification, that such enforcement does not impair any right conferred, or conflict with any inhibition imposed, by the Constitution or laws of the United States. Neither such right nor such inhibition can be in any way impaired, however fully the new equitable right may be enjoyed or enforced in the States by whose legislation it is created. The Constitution, in its Seventh Amendment, declares that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." In the Federal courts this right cannot be dispensed with, except by the assent of the

parties entitled to it, nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency. Such aid in the Federal courts must be sought in separate proceedings, to the end that the right to a trial by a jury in the legal action may be preserved intact.

In the case before us the debt due the complainants was in no respect different from any other debt upon contract; it was the subject of a legal action only, in which the defendants were entitled to a jury trial in the Federal courts. Uniting with a demand for its payment, under the statute of Mississippi, a proceeding to set aside alleged fraudulent conveyances of the defendants, did not take that right from them, or in any respect impair it.

This conclusion finds support in the prohibition of the law of Congress respecting suits in equity. The 16th section of the Judiciary act of 1789 enacted that such suits "shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law;" and this prohibition is carried into the Revised Statutes. Sec. 723. It is declaratory of the rule obtaining and controlling in equity proceedings from the earliest period in England, and always in this country. And so it has been often adjudged that whenever, respecting any right violated, a court of law is competent to render a judgment affording a plain, adequate and complete remedy, the party aggrieved must seek his remedy in such court, not only because the defendant has a constitutional right to a trial by jury, but because of the prohibition of the act of Congress to pursue his remedy in such cases in a court of equity. *Hipp* v. *Babin*, 19 How. 271, 278; *Lewis* v. *Cocks*, 23 Wall. 466, 470; *Killian* v. *Ebbinghaus*, 110 U. S. 568, 573; *Buzard* v. *Houston*, 119 U. S. 347, 351. All actions which seek to recover specific property, real or personal, with or without damages for its detention, or a money judgment for breach of a simple contract, or as damages for injury to person or property, are legal actions, and can be brought in the Federal courts only on their law side. Demands of this kind do not lose their character as claims

cognizable in the courts of the United States only on their law side, because in some state courts, by virtue of state legislation, equitable relief in aid of the demand at law may be sought in the same action. Such blending of remedies is not permissible in the courts of the United States.

In *Bennett* v. *Butterworth*, 11 How. 669, 674, in commenting upon the practice prevailing in the courts of Texas, Mr. Chief Justice Taney, after observing that although the common law had been adopted in Texas, the forms and rules of pleading in common law cases had been abolished, and the parties were at liberty to set out their respective claims and defences in any form that would bring them before the court, said : " Although the forms of proceedings and practice in the state courts have been adopted in the District Court, yet the adoption of the state practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be blended together in one suit. The Constitution of the United States, in creating and defining the judicial power of the general government, establishes this distinction between law and equity; and a party who claims a legal title must proceed at law, and may undoubtedly proceed according to the forms of practice in such cases in the state court. But if the claim is an equitable one, he must proceed according to rules which this court has prescribed, (under the authority of the act of August 23d, 1842,) regulating proceedings in equity in the courts of the United States."

This decision was followed in *Thompson* v. *Railroad Companies*, 6 Wall. 134, 137, the court there observing that " the remedies in the courts of the United States are, at common law or in equity, not according to the practice of the state courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of these principles," citing also to that effect the case of *Robinson* v. *Campbell*, 3 Wheat. 212. In *Fenn* v. *Holme*, 21 How. 481, 484, 486, the same doctrine was affirmed.

The Code of Mississippi gives to a simple contract creditor a right to seek in equity, in advance of any judgment or legal

proceedings upon his contract, the removal of obstacles to the recovery of his claim caused by fraudulent conveyances of property. There the whole suit, involving the determination of the validity of the contract, and the amount due thereon, is treated as one in equity, to be heard and disposed of without a trial by jury. It is not for us to express any opinion of the wisdom of this law, or whether or not in its operation it is more advantageous in the interests of justice than an entire separation of proceedings at law from those for equitable relief. It is sufficient that under the statute of the United States such separation is required in the Federal courts, and by the Constitution, in cases at common law, a right to a trial by jury is secured to the defendant.

The attempt is made to assimilate the enforcement of the state law in the Federal courts in the same manner as in the state courts, to proceedings in suits to enforce mortgages, and other liens upon property, created by contract as security for loans and advances. No jury, it is said, is required in those suits to ascertain the amount due on the mortgage debt, and why, it is asked, should there be any jury in the case under the state statute — that giving a lien for the debt claimed by the filing of the bill to set aside the fraudulent conveyances of the debtor. The distinction between the cases is plain, and will be obvious from a brief statement of their nature. A mortgage is in form a conveyance vesting in the mortgagee a conditional estate which becomes absolute on the non-performance of the condition. Originally, at law, it carried the rights and incidents of ownership; although at an early day equity gave to the mortgagor, even after breach of condition, a right to recover the property from forfeiture, upon payment of the debt or obligation secured, within a prescribed period. The ancient law as to the character of the instrument still prevails in some of the States, but in a majority of them this has been changed from a consideration of the object of the instrument and the intention of the parties, and it is there regarded as a mere lien upon or pledge of the property for the payment of the debt or the performance of the obligation stated. Whatever character may be ascribed to it

from its form, it has always been treated by courts of equity as intended for security, and is enforced by them solely to give effect to that intention. *Hutchins* v. *King*, 1 Wall. 53. The debt or obligation, to secure which it is given, is stated in the instrument itself, and the only proceeding with reference to its amount is one of calculation as to the interest thereon, or as to what remains due after credit of payments; and it is only to ascertain this that a reference is made to an accountant, usually a master in chancery, and not to try the validity of the debt or obligation secured. The equitable suit is to enforce the application of the property to the purposes intended by the contract of the parties. In the case at bar, under the statute of Mississippi, there is no amount stated by the defendant as due, which is secured by any lien on property executed by him; and that amount is uncertain, not resting in mere calculation of interest or in the application of credits, but upon proof of the existence and validity of the alleged contract between the parties. In all cases where a court of equity interferes to aid the enforcement of a remedy at law, there must be an acknowledged debt, or one established by a judgment rendered, accompanied by a right to the appropriation of the property of the debtor for its payment, or, to speak with greater accuracy, there must be, in addition to such acknowledged or established debt, an interest in the property or a lien thereon created by contract or by some distinct legal proceeding. *Smith* v. *Railroad Co.*, 99 U. S. 398, 401; *Angell* v. *Draper*, 1 Vern. 398, 399; *Shirley* v. *Watts*, 3 Atk. 200; *Wiggins* v. *Armstrong*, 2 Johns. Ch. 144; *McElwain* v. *Willis*, 9 Wend. 548, 556; *Crippen* v. *Hudson*, 3 Kernan, 161; *Jones* v. *Green*, 1 Wall. 330.

In *Wiggins* v. *Armstrong*, Chancellor Kent held that a creditor at large, or before judgment, was not entitled to the interference of a court of equity by injunction to prevent the debtor from disposing of his property in fraud of the creditor; citing some of the above authorities, and stating that the reason of the rule seemed to be that until the creditor had established his title he had no right to interfere, and it would lead to unnecessary and perhaps a fruitless and oppressive interrup-

tion of the debtor's rights; adding, "unless he has a certain claim upon the property of the debtor he has no concern with his frauds."

It is the existence, before the suit in equity is instituted, of a lien upon or interest in the property, created by contract or by contribution to its value by labor or material, or by judicial proceedings had, which distinguishes cases for the enforcement of such lien or interest from the case at bar.

·Upon the contention of the complainants it is not perceived why all actions at law, even for injuries to persons or property, may not be withdrawn by the State from a court of law to a court of equity, by allowing a lien upon the property of the defendants on the issue of process at the commencement of the action, and authorizing the court to direct a sale of the whole or a portion thereof, in its discretion, to pay the damages recovered, and to set aside any obstacles to their satisfaction from fraudulent conveyances of the wrong-doer. Whatever control the State may exercise over proceedings in its own courts, such a union of legal and equitable relief in the same action is not allowed in the practice of the Federal courts.

As to the cases to which we are referred, *Clark* v. *Smith*, 13 Pet. 195, and *Holland* v. *Challen*, 110 U. S. 15, a few words only need be said.

In the first case the act of Kentucky of 1796 had provided that "any person having both legal title to and possession of land may institute a suit against any other person setting up a claim thereto; and if the complainant shall be able to establish his title to such land, the defendant shall be decreed to release his claim thereto, and pay the complainant his costs, unless the defendant shall, by answer, disclaim all title to such lands, and offer to give such release to the complainant, in which case the complainant shall pay to the defendant his costs, except, for special reasons appearing, the court should otherwise decree."

The validity of this law was sustained, the court observing that "the state legislatures certainly have no authority to prescribe the forms and modes of proceeding in the courts of the United States; but, having created a right, and at the same

time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the Federal courts, no reason exists why it should not be pursued in the same form as it is in the state courts." To this view there can be no possible objection; nor can there be to the enforcement in the Federal courts of the right created. The statute simply enlarged the cases in which, without it, bills to quiet title could be maintained in the courts of the United States. Previously to its passage, in order to maintain such suit, it was necessary that the title of the plaintiff should be established by successive judgments in his favor. Upon that appearing, he being in possession of the property, courts of equity would interpose and grant a perpetual injunction to quiet his possession against any further litigation. That statute only did away with the necessity for the previous adjudications at law in favor of his right, it being declared sufficient to call into exercise the powers of a court of equity that he was in possession of the land and of the title, and was disquieted by the assertion of a claim to the property by the defendant.

In the second case, *Holland* v. *Challen*, the suit was brought to quiet the title of the plaintiff to certain real property in Nebraska, against the claim of the defendant to an adverse estate in the premises. It was founded upon a statute of that State which provided: "That an action may be brought and prosecuted to final decree, judgment or order by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons who claim an adverse estate or interest therein, for the purpose of determining such estate or interest and quieting the title of such real estate."

In that suit neither party was in possession, and the jurisdiction was maintained in equity, as no remedy in such case could be afforded in an action at law. As we there said, speaking of unoccupied lands: "It is a matter of every-day observation that many lots of land in our cities remain unimproved because of conflicting claims to them. The rightful owner of a parcel in this condition hesitates to place valuable improvements

upon it, and others are unwilling to purchase it, much less to erect buildings upon it, with the certainty of litigation and possible loss of the whole. And what is true of lots in cities, the ownership of which is in dispute, is equally true of large tracts of land in the country. The property in this case, to quiet the title to which the present suit is brought, is described in the bill as unoccupied, wild and uncultivated land. Few persons would be willing to take possession of such land, enclose, cultivate and improve it, in the face of a disputed claim to its ownership. The cost of such improvements would probably exceed the value of the property. An action for ejectment for it would not lie, as it has no occupant; and if, as contended by defendant, no relief can be had in equity because the party claiming ownership is not in possession, the land must continue in its unimproved condition. It is manifestly for the interest of the community that conflicting claims to property thus situated should be settled, so that it may be subjected to use and improvement. To meet cases of this character, statutes, like the one of Nebraska, have been passed by several States, and they accomplish a most useful purpose. And there is no good reason why the right to relief against an admitted obstruction to the cultivation, use and improvement of lands thus situated in the States should not be enforced by the Federal courts, when the controversy to which it may give rise is between citizens of different States."

It was objected in that case that if the suit was allowed under the statute in the Federal courts, controversies properly cognizable in a court of law would be drawn into a court of equity, but the court said:

" There can be no controversy at law respecting the title to or right of possession of real property when neither of the parties is in possession. An action at law, whether in the ancient form of ejectment or in the form now commonly used, will lie only against a party in possession. Should suit be brought in the Federal court, under the Nebraska statute, against a party in possession, there would be force in the objection that a legal controversy was withdrawn from a court of law."

There is nothing in that decision that gives sanction to the

enforcement in the Federal courts of any rights created by state law which impair the separation there required between actions for legal demands and suits for equitable relief.

In the subsequent case of *Whitehead* v. *Shattuck*, 138 U. S. 146, *Holland* v. *Challen* was referred to and explained; and it was said that a suit in equity for real property against a party in possession would not be sustained, because there would be a plain, adequate and complete remedy at law for the plaintiff, and that it was only intended to uphold the statute so far as suits in the Federal courts were concerned, in authorizing such suits against persons not in possession.

It follows from the views expressed that the court below could not take jurisdiction of this suit, in which a claim properly cognizable only at law is united in the same pleadings with a claim for equitable relief. Its decree must therefore be

*Reversed, and the cause remanded with directions to dismiss the bill, without prejudice to an action at law for the demand claimed, and it is so ordered.*

Mr. Justice Lamar did not sit in this case nor take any part in its decision.