# HESS *v.* HORTON.

EQUITY JURISDICTION; FRAUDULENT CONVEYANCES;
CREDITOR'S BILL.

1. The rule that equity has no jurisdiction where plain and adequate remedy can be had at law, is necessarily most closely adhered to in Federal Courts, in view of the constitutional provisions establishing the distinction between law and equity and preserving the right of trial by jury.

2. A bill in equity by a non-resident complainant against a non-resident defendant to set aside an alleged fraudulent conveyance of real estate, and to subject the same to the satisfaction of a debt contracted in another jurisdiction, is not maintainable where the bill simply alleges that the defendant has no property in the jurisdiction in which the suit is brought which can be reached by any known process. Such an allegation does not exclude the possibility that the defendant may have property, more than sufficient to satisfy complainant's claim, in another jurisdiction subject to execution at law.

3. Nor is such a bill maintainable, in any event, unless the debt sued on has been reduced to judgment. To maintain a creditor's bill, the complainant must have some interest in, or equitable lien upon the fund or property sought to be subjected to his demand.

No. 166. Submitted December 8, 1893.—Decided December 21, 1893.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, holding an equity term, sustaining a demurrer to and dismissing a creditor's bill to set aside an alleged fraudulent conveyance of real estate and to subject the same to a debt due complainant. *Affirmed.*

The COURT in its opinion stated the case as follows:

The appellant, Isaac E. Hess, trading as I. E. Hess & Co., filed this bill against William S. Horton and his wife, Helen M. Horton, and J. A. Duvall, to set aside a conveyance of certain lots in the city of Washington, as having been made in fraud of creditors, and to subject the same to the payment of his debt.

The bill shows that complainant resides in Maryland, Horton and wife in New York, and J. A. Duvall in the District of Columbia. It is alleged that defendant W. S. Horton is indebted to complainant in the sum of $210.40, for goods sold and delivered June 6, 1891; that on September 10, 1891, he conveyed the lots described in the bill to J. A. Duvall, who immediately, and as a part of the same transaction, conveyed them to the said Helen M. Horton; and that said conveyances were without consideration, and were made to hinder, delay and defraud creditors.

The only additional material allegation of the bill is that "defendant W. S. Horton is not the owner of any property, real or personal, in the District of Columbia which can be reached by any known legal process."

Defendants demurred, and were sustained by the court, which passed a decree dismissing the bill, from which this appeal has been prosecuted.

*Mr. Clarence A. Brandenburg* for the appellant:

This case presents the single legal proposition whether a simple contract creditor can file a bill to set aside a fraudulent conveyance made by his debtor, when facts are averred in the bill showing it is impossible to obtain judgment. It is obvious if the law as applied by the court below is to be the law of this jurisdiction, it will work great hardship upon this creditor and others, and be an absolute denial of justice besides taking away from creditors a material part of what little remedy is provided for them in this jurisdiction.

In the first place, it is obvious that the defendant, William S. Horton, being a non-resident of the District of Columbia, it is impossible to obtain a judgment against him at law, as personal service could not be secured. Not being the owner of any property in the jurisdiction, there is nothing to reach by attachment; and having fraudulently conveyed away his only real estate, *that* cannot be reached by any known legal process in force in this District.

In the next place, it will be noticed the conveyances re-

ferred to in the bill of complaint are *prima facie* fraudulent, as the facts averred in the bill show they were intended by Horton as a voluntary settlement upon his wife of his property, being indebted to complainant at the time.

The contention made by defendant at the hearing of this case below was that judgment is an indispensable prerequisite to a creditor's bill to set aside a fraudulent conveyance. A single decision cannot be produced in which the doctrine asserted by the court has been as broad as the doctrine asked by appellee to be applied to this case. It is believed in every case, where it has been said a creditor's bill cannot be maintained without judgment, some remedy at law existed. This would seem to be true, as in every case found in the reports, where the bill averred the debtor had absconded or was a non-resident and had fraudulently conveyed away his property or averred similar facts showing the creditor was remediless at law, the court has sustained the bill.

The mistake of the appellee is due to a misapprehension of the theory on which the courts have refused to entertain creditor's bills without judgment. His contention seems to be that a judgment is required merely as a judgment *per se*, while the appellant believes the declaration of the courts in such cases is synonymous with, and merely means a creditor must first exhaust his remedy at law, and under ordinary circumstances the best evidence of this fact is a judgment and execution returned *nulla bona*. But this is a different case. Here we have no remedy at law at all. The bill avers facts which show a judgment cannot be recovered, and it is insisted these facts supersede the necessity of its recovery. Surely courts of equity have never intended to require as a prerequisite to their jurisdiction something which cannot be done. It is clear where no legal remedy exists none can be exhausted, and the reason for the rule would cease, and with the reason the rule itself. Wait on Fraudulent Conveyances, Sec. 84 and cases cited; *Scott* v. *M'Millen*, 1 Littell (Ky.), 302; *Merchants National Bank* v. *Paine*, 13 R. I., 593; *O'Brien* v. *Coulter*, 2 Blackf., 421; *Peay* v. *Morrison*, 10

Gratt., 149; *Thurmond* v. *Reese*, 3 Ga., 449; *Lownes* v. *Hunter*, 2 Head (Tenn.), 339.

But even if any doubt could exist on the question after an examination of these decisions, it has been fully determined, so far as this jurisdiction is concerned, by the Supreme Court of the United States. *Russell* v. *Clark*, 7 Cranch, 89; *Case* v. *Beauregard*, 101 U. S., 690; *Nat'l. Tube Works* v. *Ballou*, 146 U. S., 517.

*Mr. Andrew B. Duvall* for the appellee:

There was no error in the decree dismissing this bill; because the court had no jurisdiction until the appellant had obtained his judgment at law. The creditor must first obtain his judgment, or in some manner acquire a lien or a right to a lien on the debtor's property. In this case he not only did not exhaust his legal remedy, but actually made no attempt whatever in that direction.

He proposes by this proceeding to deprive the debtor of his constitutional right of a trial by jury, in a jurisdiction where the legal and equitable tribunals exercise their different and original functions in all their respective vigor. We respectfully submit, however, that it is settled law in this District that a simple contract creditor, who has not reduced his claim to judgment, has no standing in a court of equity upon a bill to set aside and vacate an alleged fraudulent conveyance. Wait on Fraudulent Conveyances, Sec. 73; *Cates* v. *Allen*, 149 U. S., 451; *Scott* v. *Neely*, 140 U. S., 106; *Adler* v. *Penton*, 24 How., 407; *Day* v. *Washburn*, 24 How., 352.

The existence of judgment, or of judgment and execution, is necessary, first, as adjudicating and definitely establishing the legal demand, and, second, as exhausting the legal remedy. *Cates* v. *Allen, supra; Smith* v. *Fort Scott R. R.*, 99 U. S., 398; *Jones* v. *Green*, 1 Wall., 330; *Taylor* v. *Bowker*, 111 U. S., 110.

It may be that a prior judgment is unnecessary where a claim is to be satisfied out of a fund which is accessible only

by the aid of a court of chancery, as in *Russell* v. *Clark*, 7 Cranch, 69; or where a claim is to be satisfied out of the estate of a deceased debtor; or as in *Case* v. *Beauregard*, 101 U. S., 690, where the bank had a lien upon the property; or as in *Nat. Tube Works Co.* v. *Ballou*, 146 U. S., 517, where general creditors sought to reach a trust fund—the capital stock of a corporation—but equity in none of these cases exercises an auxiliary jurisdiction to aid legal process; in all of them, it acts under the original jurisdiction.

Mr. Justice SHEPARD delivered the opinion of the Court:

There was no error in sustaining the demurrer, because the allegations of the bill do not make a case that is cognizable in equity. It is a settled principle of equity jurisprudence that courts thereof have no jurisdiction to grant relief where plain and adequate remedy can be had at law. This rule is necessarily most closely adhered to in all of the United States courts. It is declared in the Judiciary Act, in strict accord with those provisions of the Constitution which establish the distinction between law and equity, and preserve the right of trial by jury in all cases at law where the value in controversy shall exceed twenty dollars. This right is not compensated by sending issues out of chancery to be tried by jury, and is therefore to be carefully guarded from the encroachments of courts of equity.

For aught that appears in this bill, defendant Horton may have property subject to execution in the State of New York, where he resides, more than sufficient to satisfy complainant's demand. The complainant, who resides in Maryland, could as easily have resorted to the courts of the place of defendant's residence, where he may have property subject to execution, as to the courts of this District, where defendant once had property which, it is alleged, has been conveyed by him without consideration and to defraud his creditors.

If the defendant should have property remaining and subject to execution where he resides, it ought not to be

unlawful for him to make voluntary conveyances of his property situated here, in so far, at least, as the rights of non-resident creditors are concerned. If the debt be contracted in the ordinary course of business in this District, by one who has since removed, or if it be due to a resident thereof, then an exception to this rule might be made in its favor. But this question is not before us, and we are not to be understood as even intimating an opinion upon it. It is enough that this bill shows upon its face that the complainant is a resident of Maryland, and does not show that the debt was contracted in the District of Columbia, or that defendant Horton ever even resided therein.

Again, no reason appears why, if the allegations of the bill be true, complainant could not have commenced his action at law, and sued out a writ of attachment against the non-resident defendant. Counsel undertakes to explain the failure to pursue this course on the ground that defendant Horton has only an equitable interest remaining in the lands conveyed, and this is beyond the reach of legal process under the law prevailing in this District. This reasoning is not satisfactory. The conveyance by Horton to his wife passed a complete title to her, as against him, whether made in good faith or in bad. If made for the purpose of defrauding creditors, neither Mrs. Horton nor Duvall can be held as trustees for their benefit, because as to them the conveyance is void.

Another question raised by the demurrer and much discussed is this: Can the complainant maintain his bill to set aside the fraudulent conveyance, without first having reduced his debt to judgment?

The doctrine of the Supreme Court upon this point is stated in *Scott* v. *Neely*, 140 U. S., 106, by Mr. Justice Field, as follows:

" In all cases where a court of equity interferes to aid the enforcement of a remedy at law, there must be an acknowledged debt, or one established by a judgment rendered, accompanied by a right to the appropriation of the property

of the debtor for its payment; or, to speak with greater accuracy, there must be in addition to such acknowledged debt an interest in the property, or a lien thereon created by contract, or by some distinct legal proceedings." See, also, *Smith* v. *R. R. Co.*, 99 U. S., 398; *Nat. Tube Works Co.* v. *Ballou*, 146 U. S., 517.

In this last case, it was said: "When it is sought by equitable process to reach the equitable interests of the debtor, the bill, unless otherwise provided by statute, must set forth a judgment in the jurisdiction where the suit in equity is brought, the issuing of an execution thereon, and its return unsatisfied, or must make allegations showing that it is impossible to obtain such a judgment in any court within such jurisdiction."

Appellant contends that he has brought himself within the exception above stated by the averment of his bill, "that defendant has no property in the District of Columbia which can be reached by any known legal process." We cannot assent to this. But, even if his view of the scope of the exception in general were sound, it could not apply to this case, because, as we have before said, he must, at least, have shown by averment of the bill, that defendant Horton had no property that could be reached by legal process in the State where he resides.

We will not say that there is no possible case in which this exception, as claimed, may not be made to apply, but wherever it has been held by the Supreme Court that judgment at law and fruitless execution thereon are not indispensable prerequisites to the right to resort to equity for relief, it will be found that complainant had some interest in, or equitable lien upon, the fund or property sought to be subjected to his demand, as was the case in *Case* v. *Beauregard*, 101 U. S., 688, another of the authorities relied on by appellant.

The question seems to be definitely settled by the case of *Cates* v. *Allen*, 149 U. S., 451. In that case a bill was filed by simple contract creditors to set aside a fraudulent convey-

ance made by their debtors to an assignee for the benefit of creditors. The remedy was pursued under a statute of the State of Mississippi, conferring jurisdiction in such cases upon courts of equity, in the first instance. The majority of the court reaffirmed the doctrine of *Scott* v. *Neely*, *supra*, to the effect that even an express statute of the State could not confer equity jurisdiction in such a case upon the courts of the United States, because "in conflict with the constitutional provision by which the right to a trial by jury is secured." The Chief Justice, speaking for the majority of the court, said:

"The principle that a general creditor cannot assail as fraudulent against creditors an assignment or transfer of property made by his debtor until the creditor has first established his debt by the judgment of a court of competent jurisdiction and has either acquired a lien upon the property, or is in a situation to perfect a lien thereon, and subject it to the payment of his judgment, upon the removal of the obstacle presented by the fraudulent assignment or transfer, is elementary. Wait on Fraud. Conv., Sec. 73 and cases cited. The existence of judgment or of judgment and execution is necessary, first, as adjudicating and establishing the legal demand; and, second, as exhausting the legal remedy." The dissenting minority conceded the soundness of this principle, but held that the jurisdiction in that particular case was maintainable under the statute.

*The decree dismissing the bill must be affirmed, with costs to the appellees ; and it is so ordered.*