CRADDOCK v. FULTON et al.

(Circuit Court, N. D. West Virginia. August 22, 1905.)

REMOVAL OF CAUSES—SUIT TO ENFORCE STATUTORY REMEDY—FOREIGN AT-
TACHMENT UNDER WEST VIRGINIA STATUTE.

Code W. Va. 1899, c. 106, provides that one having a simple contract
debt or claim for unliquidated damages against a nonresident of the state
may bring an action at law thereon supported by attachment, or may at
his election sue out an attachment on the ground of nonresidence and
bring a suit in equity to establish his claim and enforce the lien of the
attachment; that in such case he shall have a lien from the date of the
attachment levied; and that the ground for suing out the attachment may
be contested by plea filed, and the issue thereon shall be tried by a jury,
unless waived. *Held*, that such a suit was one to enforce a lien pre-
viously acquired by legal proceedings, and therefore within the jurisdic-
tion of a federal court of equity, and was removable by defendant on the
ground of diversity of citizenship, where the requisite facts appear.

On Motion to Remand to State Court.

R. G. Linn and R. F. Kidd, for plaintiff.

Reese Blizzard, Hamilton & Morris, and Sterling, Higbee, Dum-
bauld & Brown, for defendants.

DAYTON, District Judge. On May 22, 1903, Joe N. Craddock filed
in the clerk's office of the circuit court of Gilmer county, W. Va., a veri-
fied account against E. D. Fulton, claiming a balance, after allowing
credits, of $8,368.24 to be due him for certain specified commissions
on land and coal purchases, services rendered, and money expended,
upon which a writ of attachment issued against Fulton, as a nonres-
ident of the state, and was levied that day on certain real estate of his
in that county. On the same day, in support of said attachment, Crad-
dock instituted in that court his suit in equity against Fulton and others,
and at June rules, 1903, filed his bill. In this bill he sets forth in de-
tail his account against Fulton and the credits to which the same was
subject, sets forth the issuance of said attachment and levy, describes
the lands so attached and the vendors' liens existing thereon, the parties
holding the same being made defendants, and prays that by reason of
Fulton's nonresidence in the state and of the said attachment he (the
plaintiff) might have a decree for the amount of his account and said
lands might be sold to satisfy the same. Fulton in due time filed his
petition and bond, and the cause was removed to this court, where it
was by order on January 13, 1904, docketed, the answer of Fulton filed,
general replication entered thereto, and time fixed within which to take
testimony. At several different times, by orders, the time within which
such testimony was to be taken was extended. Fulton in his answer
denies all liability of any kind to Craddock, and in effect says that upon
an account properly stated Craddock would owe him. On January
14, 1905, the plaintiff entered his motion to remand the cause, which
my predecessor took time to consider, and it is this motion that I am
now to decide.

The question involved, in the practice of this state, is a very im-
portant one, and, if this motion is granted, is likely to be far-reaching

in its effects upon the jurisdiction of the federal courts of the state. Chapter 106 of the Code of 1899 of West Virginia contains the statute law of the state relating to attachments. It provides, among other things, that in any action at law or suit in equity, based upon any claim or debt arising out of contract or to recover damages for any wrong, brought or about to be brought, at the commencement or at any time before judgment, an order of attachment may be sued out upon affidavit made by plaintiff or some credible person, stating the nature of the claim and the amount, at the least, affiant believes the plaintiff entitled to recover, and the existence of one or more of eight distinct grounds, the first of which is that the defendant, or one of them, is a foreign corporation or a nonresident of the state; that such attachment may be sued out in equity alone for a claim not due, but, if nonresidence in such case is relied on, affiant must show the residence of defendant and his (affiant's) belief that he proposed to remain resident, at the time credit was extended; that such attachment may be levied upon defendant's real estate situate in the state, by the officer indorsing on the order, or a paper attached thereto, a statement giving as near as may be the quantity, or the supposed quantity and the location thereof, of such real estate attached; that the plaintiff shall have a lien on any such real estate, levied on by virtue of such attachment, from the date of the suing of the same; that the ground for suing out the attachment may be contested by plea filed, and the issue thereon shall be tried by a jury, unless the same be waived by the parties, and new trial may be awarded as in other cases. It will thus be seen that by this statute, because of the nonresidence alone of the defendant, a plaintiff, who has a simple contract debt or claim for unliquidated damages, has his choice of bringing his action at law, as he would have to do as against a resident, supported by attachment, or, by suing out attachment on the ground of such nonresidence, may go into a court of equity to have its lien enforced and his purely legal claim adjudicated. And it is most earnestly insisted that, if he does adopt the latter course, the nonresident defendant is absolutely powerless to remove the cause to the federal court, as he would clearly have right to do if the first course had been adopted by his adversary. This contention is based upon the rulings in such cases as Bank v. Prager, 91 Fed. 689, 34 C. C. A. 51; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 977, 37 L. Ed. 804; Scott v. Neeley, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358; Hollins v. Brierfield Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113; Tompkins v. Catawba Mills (C. C.) 82 Fed. 780; Viquesney v. Allen, 131 Fed. 21, 65 C. C. A. 259.

If this contention of plaintiff's counsel be true, the jurisdiction of federal courts may, in practical effect, be destroyed by future practice in the state courts, so far as removal for nonresidence of defendant is concerned; for, under the sweeping provision of this attachment law, any person having a claim of a pecuniary character arising out of contract or tort may sue out an attachment against a nonresident, solely because he is a nonresident, and by his own choice, with his adversary helpless and without voice to prevent, may choose the equity forum to have his hearing, and, having gone there, if the nonresident follows

and makes defense to the grounds of attachment, to wit, either the question of residence or the validity of the claim, he may, if he desires, refuse to have such issue determined by the court of equity at last by demanding a jury trial, which the local court, as a matter of right by the terms of the statute, would be compelled to grant him. And this method of procedure can be taken in almost any conceivable case—in assumpsit, debt, trespass, or trespass on the case. The Supreme Court of Appeals of West Virginia has construed this statute, and held, in McKinsey v. Squires, 32 W. Va. 41, 9 S. E. 55, that by reason of suing out of such attachment a suit in equity to recover damages for a breach of marriage contract, accompanied with seduction, can and must be sustained (cited and approved in Bowlby v. De Witt, 47 W. Va. 323, 34 S. E. 919).

After a long and earnest consideration of the question, I do not believe such contention to be sound law, nor do I believe the cases above cited, when carefully studied and distinguished, will establish it. The cases of Scott v. Neeley, Cates v. Allen, and Hollins v. Brierfield Co., decided by the Supreme Court, cited above, all involve substantially the same state of facts, and in the two latter Justices Brown and Jackson dissented. In all three, alleged fraudulent or void conveyances were sought to be set aside at the instance of simple contract creditors, who could not and did not acquire any lien upon the property by any independent proceeding, but solely and alone by the filing of the bill. In Scott v. Neeley, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, suit was brought directly in the federal court for the Northern District of Mississippi to set aside conveyances to Scott's wife as fraudulent under a statute (stronger than section 2 of chapter 133 of the West Virginia Code of 1899) which provided that courts of equity in that state should, at the instance of simple contract creditors, have jurisdiction of suits to set aside fraudulent conveyances, and the creditor instituting such suit should have a lien upon the property from the filing of the bill. Mr. Justice Field, at page 109 of 140 U. S., page 713 of 11 Sup. Ct., 35 L. Ed. 358, says:

"The general proposition, as to the enforcement in the federal courts of new equitable rights created by the states is undoubtedly correct, subject, however, to this qualification, that such enforcement does not impair any right conferred or conflict with any inhibition imposed by the Constitution or laws of the United States. Neither such rights nor such inhibition can be in any way impaired, however fully the new equitable right may be enjoyed or enforced in the States by whose legislation it is created. The Constitution, in its seventh amendment, declares that 'in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.' In the federal courts this right cannot be dispensed with by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency. Such aid in the federal courts must be sought in separate proceedings, to the end that the right to a trial by a jury in the legal action may be preserved intact."

Again, at page 113 of 140 U. S., page 715 of 11 Sup. Ct. 35 L. Ed. 361, he says:

"In all cases where a court of equity interferes to aid the enforcement of a remedy at law, there must be an acknowledged debt, or one established by a judgment rendered, accompanied by a right to the appropriation of the

property of the debtor for its payment, or, to speak with greater accuracy, there must be, in addition to such acknowledged or established debt, an interest in the property *or a lien thereon* created by contract or by *some distinct legal proceeding.*" (Italics mine.) Citing Smith v. Railroad Co., 99 U. S. 398, 25 L. Ed. 437; Angell v. Draper, 1 Vern. 398, 399; Shirley v. Watts, 3 Atk. 200; Wiggins v. Armstrong, 2 Johns. Ch. 144; McElwain v. Willis, 9 Wend. 548, 556; Crippen v. Hudson, 13 N. Y. 161; Jones v. Green, 1 Wall. 330, 17 L. Ed. 553.

The learned justice then quotes approvingly Chancellor Kent's expression in Wiggins v. Armstrong that, "unless he [the plaintiff creditor] has a certain claim upon the property of the debtor, he has no concern with his frauds," and then summarizes the matter in these significant words:

"It is the existence, before the suit in equity is instituted, of a lien upon or interest in the property, created by contract or by contribution to its value by labor or material, or by judicial proceedings had, which distinguishes cases for the enforcement of such lien or interest from the case at bar."

There comes to me a strong conviction that the distinguished jurist, in using the words "by contribution to its value by labor or material," had in mind that class of liens known as mechanics' or labor liens, declaration of which in most of the state statutes is an act ex parte on the part of claimant, perfected by the recording of the verified account and declaration and the institution of a suit in equity in aid of and to enforce the same. It also comes to me with equal force and conviction that by the use of the words "by judicial proceedings had" he intended to include liens acquired by "the distinct legal proceeding" by attachment; for under the attachment law of this state the proceeding is "distinct," and it is also "legal." It is a proceeding against common-law right, and therefore must be strictly construed. It must rest upon its own foundation, which is the affidavit, and, if this affidavit be defective, no allegations in the bill in equity to enforce it will save it from failing. It gives an "interest" in and a "lien" upon real property from the date of its issuance, and not from the date of the filing of the bill. By it a superior lien over all subsequent judgment or other liens may be maintained. It on the other hand may be dismissed, and yet the suit in equity may be maintained on independent grounds. Likewise a demurrer may be sustained to the bill in equity without destroying the integrity of the attachment lien. That it is a "legal" proceeding, is determined by the terms of the statute itself, which provides that defense to it shall be by plea and the issue thereon tried by jury, unless the parties waive trial in that way. Finally, it is to be stated that upon a purely legal demand it must issue before the suit in equity can be maintained. This is clear from other primary principles governing courts of equity, which limit its jurisdiction to cases where there is no other adequate remedy at law, and require a special equitable ground to exist at the time its writ of summons issues. In this case the only ground that can exist is the existence of the attachment lien itself. But this proposition I think is clear from the statute itself. It says:

"When any action at law or suit in equity is about to be or is instituted, * * * the plaintiff at the commencement of the action or suit, and at any time thereafter and before judgment, may have an order of attachment."

It does not say "before judgment and decree," but "before judg-

· ment"; and I think the word "judgment" is used in its restricted sense, as relating alone to suit at law. No one in this state will argue that, under our administration of equity principles, a bill may be brought against a nonresident for a simple account, the subject of assumpsit, and be maintained until all evidence touching the account is taken and the case is ready for decree, under the assumption that plaintiff may sue out·an attachment and thereby afford, under this statute, a ground for equitable jurisdiction not existing at the time the writ issued. Therefore we find this attachment lien possesses all the elements laid down by Justice Field as being exceptional to the lien acquired in Scott v. Neeley, by the sole reason of the.filing of the bill to set aside a fraudulent conveyance; that is to say, it is a "lien against the property," "created by a distinct legal proceeding," and it "has existence before the suit in equity is instituted." Nor does it contravene the right of trial by jury guarantied by the seventh amendment to the Constitution;· for such trial, by·the express terms of the statute, as I have hereinbefore set forth, is expressly preserved to the parties, unless they expressly waive it.

Turning, now, to the other cases, we find that Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 977, 37 L. Ed. 804, another Mississippi case, was a suit by simple contract creditors to set aside an alleged fraudulent assignment, thereby acquiring a lien by the filing of the bill alone by virtue of the statute to that effect, in which the further principle was enunciated that in such case "the fact that a court of chancery may summon a jury cannot be regarded as the equivalent of the right of a trial by jury, secured by the seventh amendment to the Constitution." But in this case the two last extracts from Scott v. Neeley, quoted by me, are quoted approvingly by Mr. Chief Justice Fuller, who then adds:

"The mere fact that a party is a creditor is not enough. He must be a creditor with a specific right or equity in the property, and this is the foundation of the jurisdiction in chancery, because jurisdiction on account of the alleged fraud of the debtor does not attach as against the immediate parties to the impugned transfer, except in aid of the legal right."

In Hollins v. Brierfield Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, an Alabama case, a simple contract creditor sought to set aside a mortgage made by defendant company and have the property sold and the proceeds applied to the payment of the debts of parties and for liquidation. Here again Scott v. Neeley and Cates v. Allen are cited and approved, and the further principle is laid down that the doctrine established in those cases—

"Is not changed by the fact that the suit is brought in a court in which at the time is pending another suit for the foreclosure of a mortgage or trust deed upon the property of the debtor."

The case of Tompkins Co. v. Catawba Mills (C. C.) 82 Fed. 780, a South Carolina case, from this circuit, was one where the plaintiff held notes of the defendant corporation claimed by him to be secured by a general mortgage or deed of trust, and brought his bill setting forth that the company was insolvent or in imminent danger of insolvency; that its works had been idle for several months; that it had no money or credit to go on; that there was serious conflict and want of harmony among its officers; that its property was deteriorating in value and

the danger of irreparable loss was great. The prayer was for an accounting, an injunction, the appointment of a receiver, a sale of the property, and distribution of the proceeds to creditors according to priorities. In this case, Simonton, J., reiterated the doctrine of Scott v. Neeley that:

"In all cases where a court of equity interferes to aid the enforcement of a remedy at law there must be, first, an acknowledged debt, or one established by a judgment rendered; and, secondly, an interest of the creditor in the property, or a lien thereon created by contract, or by some distinct legal proceeding, and giving a right to have it appropriated to pay the debt."

But he held, because the defendant acknowledged in answer liability on one of the notes, the first condition was fulfilled, and, because plaintiff alleged in his bill that his notes were secured by the general mortgage given by the company upon its property, the second requisite was fulfilled.

Viquesney v. Allen, 131 Fed. 21, 65 C. C. A. 259, was a suit brought in this court by a simple contract creditor to set aside a fraudulent conveyance, and was decided entirely upon the principles we have quoted.

In none of these cases were attachment liens involved, and none are in conflict with, but in my view strongly tend to establish, the position that suits brought to enforce such liens are not within the general rule laid down in these cases, and that such liens are ones "created by distinct legal proceedings existing before suit in equity instituted."

But when we take up the case of Bank v. Prager, 91 Fed. 689, 34 C. C. A. 51, we find a much greater embarrassment in reconciling its apparent ruling with our position. In that case Prager & Son made an assignment of their stock of store goods to Keller, trustee, and Keller, trustee, sold them in gross to Katzenstein. The bank, having $2,-500 of Prager & Son's notes not due, sued out attachment against the goods and simultaneously filed its bill in chancery charging the deed of trust by Prager to Keller, trustee, to have been executed to hinder, delay, and defraud creditors, and subsequently an amended bill was filed alleging the same, and, further, that the sale made by Keller, trustee, to Katzenstein was fraudulent. These proceedings were all had in the state court. Katzenstein thereupon instituted in the federal court a couple of actions for damages against the bank and the sheriff in this court, and by agreement the bank's cause was "removed" into the federal court. In reversing the lower court and directing a remand thereof, Judge Paul does so on several grounds—one, because parties cannot give jurisdiction by consent and without the filing of petition and bond in the state court; another, because there was not diversity of citizenship; and he also gives as another reason the following:

"Even if the diversity of citizenship existed between the parties to the original cause, which allows a removal into a federal court, the character of the suit prevented such removal. It was brought under a statute of West Virginia which permits a contract creditor, before his claim has been reduced to judgment, to sue out an attachment in equity and attack a conveyance as void, because made with intent to hinder, delay, and defraud creditors. Such a suit cannot be maintained in a federal court of equity."

And he cites in support of this the four cases of Cates v. Allen, Scott v. Neeley, Hollins v. Brierfield Co., and Tompkins Co. v. Catawba Mills, which we have just considered. With the utmost deference, I submit, the learned judge in this particular point erred in saying we had a statute allowing the suing out of an attachment and the attacking of a conveyance as fraudulent by a simple contract creditor. By two entirely separate and distinct statutes these two remedies are provided, but they are distinct and independent remedies, seldom united, and governed, as I have shown, by distinct principles. Again, I submit with like deference that the cases cited did not relate to attachment liens, and do not support the position assumed that such liens are on the same basis as simple contract debts. As this distinction seems to have been overlooked entirely by Judge Paul in this case, I prefer to follow what I believe to have been the true purpose and scope designed to be given the rule of jurisdiction in this particular by Chief Justice Fuller and Justices Field and Brewer in the cases of Scott v. Neeley, Cates v. Allen, and Hollins v. Brierfield Co.; and this, too, because of the far-reaching effect the holding to the contrary would have upon the federal courts' jurisdiction in this state.

Let the motion to remand be overruled, and, inasmuch as defendant Fulton's defense, as disclosed by his answer to the bill, is wholly a denial of the justness of plaintiff Craddock's claim, and therefore an assailing of one of the essential grounds upon which the attachment is based, I will require him, by formal plea to the attachment, to set up this defense, and the issue upon such plea I will direct to be tried by a jury, unless the parties both expressly waive such trial, and meanwhile I will enter no order in the equity cause itself until the issue in such attachment proceeding can be determined.

NOTE.—Since rendering the foregoing opinion my attention has been called to the recent case of Courtney v. Pradt, 196 U. S. 89, 25 Sup. Ct. 208, 49 L. Ed. 398, the facts in which are somewhat similar to the one here, and in which Mr. Chief Justice Fuller, in accord with the foregoing view, holds that the right of removal cannot be abridged by state statutes, and, the case being removed, the federal court has power to so deal with the controversy that the party can lose nothing by his choice of tribunals. This would seem to be conclusive.