## ATLANTIC TANK & BARREL CORPORATION v. McCLENDON.

### No. 6870.

Circuit Court of Appeals, Sixth Circuit.

Feb. 11, 1936.

A. W. Grafton and Ernest Woodward, both of Louisville, Ky. (H. G. Hightower, of Cincinnati, Ohio, Elwood Hamilton, of Louisville, Ky., and Hightower & O'Brien, of Cincinnati, Ohio, and Woodward, Hamilton & Hobson, of Louisville, Ky., on the brief), for appellant.

Laurence B. Finn, of Bowling Green, Ky. (Lawrence & Carter, of Tompkinsville, Ky., on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Action for balance due under contract. By agreement of the parties, the cause was transferred to the equity docket. The court overruled exceptions to the master's report, which found for appellee, adopted the same, and entered a decree in the sum of $7,990.69. On petition for rehearing appellant requested findings of fact and conclusions of law, which were entered by the court.

Two legal questions are presented: (1) Whether the action in the lower court was cognizable only at law, and (2) if so, whether the facts as found by the court are supported by the evidence.

We agree with appellant that this petition, which prayed for a money judgment only, presented a legal action. Scott v. Neely, 140 U.S. 106, 117, 11 S.Ct. 712, 35 L.Ed. 358; Mounger v. Wells, 23 F. (2d) 374 (C.C.A.5). While the transactions involved many items, appellee did not seek an accounting, and prayed for no discovery. If the subject-matter of the suit belonged to the class over which a court of equity has jurisdiction, appellant waived its objection to a trial in equity by entering into a written agreement for transfer to the equity docket. Brown, Bonnell & Co. v. Lake Superior Iron Co., 134 U.S. 530, 536, 10 S.Ct. 604, 33 L.Ed. 1021; Southern Pacific R. Co. v. United States, 200 U.S. 341, 349, 26 S.Ct. 296, 50 L.Ed. 507. But here the action was legal, and not equitable. After joining in the request for equity trial, appellant proceeded without objection in the hearing before the master. Subsequent to the decree it filed a petition and supplemental petition for rehearing, requesting the court to treat the agreement of the parties transferring the case to equity as one waiving trial by jury and as a submission to trial by the court without the intervention of a jury, and moved that the court separately state its findings of fact and conclusions of law.

We treat the trial below as a trial at law without a jury. The decree which found a balance of $7,990.69 to be due to appellee may be considered the equivalent of a money judgment. It granted no equitable relief. The findings had the effect of a verdict, and the main question is whether there was substantial evidence to support them.

The parties entered into contracts under which appellee agreed to cut and deliver to appellant a certain number of staves. The contracts incorporated by reference the rules prescribed by the Associated Cooperage Industries of America, which required staves measured in stave units 4½ inches wide computed by an average of all pieces more than 2½ inches in width. The thickness and length are not in controversy. The contracts provided for a preliminary or rough inspection and a final inspection to be made by appellant within sixty days. After the rough inspection trade acceptances were to be issued by appellant for part of the balance due per thousand staves, exclusive of culls. A cull is a defective piece that cannot be worked into a barrel, due to rotten timber, dead wood, discolored or rotten sap, pin worms, knots, checks, splits, etc. Flattening of the cup in the wide pieces or loss of sap which reduces the piece to less than 2½ inches wide makes a piece a cull.

The trade acceptances were issued, but the final inspection was not made at the time agreed. Appellant stated that it would bear any loss occasioned by the delay. 1,704,171 pieces were delivered, 1,689,916 of which were placed, as agreed in the contracts, on appellant's yards. A car of 14,255 pieces was shipped elsewhere. This car was not listed in the bills of sale, but it is included in the number of staves found by the court to have been delivered to appellant. The 1,689,916 pieces remained in open yards for periods varying from four to fourteen months. When

the pieces delivered to the yards were finally inspected, a large percentage of them were substantially deteriorated, and when added together they lacked considerably of reaching the equivalent number of staves. 1,628,361 pieces were received on final inspection, of which only 1,425,858 were accepted as staves.

Appellee claims that the staves deteriorated because of defects such as rotten sap, wormy sap, checks and cracks which were brought out by the exposure of the pieces to the weather in the open yards. The wider pieces flattened out and became culls. Appellant urges that the pieces were in good condition when finally inspected, but narrow; that the pieces were at all times in appellee's possession, and that he has not proved deterioration was due to exposure to the weather, arising from failure to inspect.

The court found that the number of staves cut and delivered under the contract was 1,704,171. Appellant concedes that this number was delivered, but complains that the court found the number of staves to be the same as the number of pieces received. It is true that not every piece is a standard stave. However, there is substantial evidence to support the court's finding. Appellant's contention that the court erred in deducting four per cent. for culls is likewise untenable. The record shows that this was a reasonable and proper deduction if the pieces had been inspected within the time required by the contracts.

Appellant contends that appellee offers only opinion evidence to support his claim that the pieces deteriorated because of weather exposure. The record does not show this. An inspector from the Louisville Cooperage Company some time during 1928 closely inspected a number of these pieces, and they showed less than one per cent. of culls and an average width of 4.60 inches. Subsequently he examined some of the same staves after shipment. The inspection then showed that the culls averaged more than seven per cent., and the width was 4.25. Another witness examined the staves in the yards, and testified that they had an average width of from 4.60 to 4.65. He stated that the staves later, after being out in the weather, showed a deterioration of from six to eight per cent. The staves were made from living wood and first-class timber. One witness inspected two or three carloads of the pieces, measuring them with a tape-line, before they were delivered, and they were from 5.15 to 5.20 in width. Still another witness said that in February or March, 1929, thirty-five per cent. of the staves showed a total loss on account of sap; that the general average of their width was 4.27, and that if there had been no loss in sap the general average would have been 4.62; that age and weather conditions would cause this deterioration. This testimony rises above the status of opinion evidence.

Appellant introduced testimony that deterioration could be caused by faulty stacking, and that the staves were not properly spaced. The record shows that the pieces were stacked in the customary way for shipment. Substantial evidence exists that appellant's delay in inspection directly contributed to the loss from deterioration caused by the elements.

The judgment of the District Court is affirmed.